**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

RANCHO DEL OSO PARDO, INC.;
RIVER BEND RANCH, LLC; and
CHAMA III, LLC d/b/a CANONES
CREEK RANCH,

      Plaintiffs,

vs.                                                                    CIV 20-427 SCY/KK
                                                                       (as consolidated with
                                                                       CIV 20-468 SCY/KK)

NEW MEXICO DEPARTMENT OF GAME
AND FISH; MICHAEL SLOANE, director of the
New Mexico Department of Game and Fish, in
his individual and official capacity; NEW
MEXICO GAME COMMISSION; SHARON
SALAZAR HICKEY, chair of the New Mexico
Game Commission, in her individual and official
capacity; ROBERTA SALAZAR-HENRY,
vice-chair of the New Mexico Game Commission,
in her individual and official capacity; JIMMY
BATES, member of the New Mexico Game
Commission, in his individual and official
capacity; GAIL CRAMER, member of the
New Mexico Game Commission, in her
individual and official capacity; TIRZIO
LOPEZ, member of the New Mexico Game
Commission, in his individual and official capacity;
DAVID SOULES, member of the New Mexico
Game Commission, in his individual and official
capacity; and JEREMY VESBACH, member of
the New Mexico Game Commission, in his
individual and official capacity,

      Defendants.

**MEMORANDUM OPINION AND ORDER DENYING MOTIONS TO STAY AND
GRANTING IN PART MOTIONS TO DISMISS**

      This matter comes before the Court on consolidated cases that seek enforcement of New

Mexico Administrative Code ("NMAC") Section 19.31.22. This regulation provides a process by

which property owners whose property abuts waterways can seek a certification and signage that the waterway is non-navigable and closed to the public. Plaintiffs are companies and LLCs that own ranches along rivers and who submitted, or planned to submit, applications for certification pursuant to Section 19.31.22. They bring suit against: (1) the New Mexico Department of Game and Fish (the "Department") and its director, Michael Sloane[1] and (2) the New Mexico Game Commission (the "Commission") and its individual members ("Commissioners").[2] Plaintiffs seek a writ of mandamus or, in the alternative, declaratory judgment, compelling Defendants to issue certificates as set forth in Section 19.31.22. They also seek damages under Section 1983 for denial of constitutional rights.

Presently before the Court are two sets of motions: (1) Motions to Stay filed by both sets of Defendants seeking to stay this matter pending the outcome of the New Mexico Supreme Court case *Adobe Whitewater Club of New Mexico v. Honorable Michelle Lujan Grisham*, No. S-1-SC-38195 (N.M. filed Mar. 13, 2020) ("*Adobe Whitewater*"); and (2) Motions to Dismiss filed by the Department and Director Sloane based in part on qualified immunity. Case precedent dictates that district courts prioritize issues related to qualified immunity and so the Court addresses those issues first. Addressing those issues, the Court concludes that Director Sloane is entitled to qualified immunity on Plaintiffs' claims for violation of substantive due process and equal protection. However, the Court will allow Plaintiffs an opportunity to amend their

---

[1] Plaintiffs sue Director Sloane in his official and individual capacity. "Since official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent," *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978), the Court uses the term "Department" when addressing the official capacity claims and "Director Sloane" when addressing the individual capacity claims.

[2] Plaintiffs sue the Commissioners in their official and individual capacities. The Court uses the term "Commission" when addressing the official capacity claims and "Commissioners" when addressing the individual capacity claims.

Complaints. Thus, the Court grants in part the Motions to Dismiss. Because the Court addresses

qualified immunity and the Motions to Dismiss, it denies the Motions to Stay.

## BACKGROUND

At the heart of this case is the Stream Access Law, enacted by the New Mexico

Legislature and effective July 1, 2015. This law provides:

> No person engaged in hunting, fishing, trapping, camping, hiking, sightseeing, the operation of watercraft or any other recreational use shall walk or wade onto private property through non-navigable public water or access public water via private property unless the private property owner or lessee or person in control of the private land has expressly consented in writing.

NMSA § 17-4-6(C). Following that statute, the New Mexico Game Commission issued Section

19.31.22, which establishes "rules, requirements, definitions and regulations implementing the

process for a landowner to be issued a certificate and signage by the director and the commission

that recognizes that within the landowner's private property is a segment of a non-navigable

public water, whose riverbed or streambed or lakebed is closed to access without written

permission from the landowner." 19.31.22.6 NMAC. Plaintiffs bring these consolidated lawsuits

to enforce Section 19.31.22.

### 1.  Factual Background

Because this matter is before the Court on motions to dismiss, the Court accepts the

following facts Plaintiffs set forth in their Complaints as true.[3]

Section 19.31.22 describes a process through which landowners can apply for and obtain

a certification regarding the non-navigable water that abuts their land. *Rancho*, Doc. 1-1 ¶ 17.

---

[3] The consolidated cases in this matter are *Rancho Del Oso Pardo, Inc. v. N.M. Dep't of Game and Fish*, No. 20cv427 (D.N.M. filed May 5, 2020) ("*Rancho*"), and *Fenn Farm v. N.M. Dep't of Game and Fish*, No. 20cv468 (D.N.M. filed May 14, 2020) ("*Fenn Farm*"). *Rancho* is the lead case, and except as otherwise listed, the facts are taken from the Complaint in the lead case.

The application process requires the landowner to submit specific information, according to Section 19.31.22.8(B). *Id.* ¶ 18. Once the landowner submits the required information, it "shall be accepted for further consideration . . . without regard to the merits of the application," and "shall be forwarded by the department to the director so that a determination can be made by the director whether the application meets the requirements set forth in 19.31.22.8 NMAC." *Id.* ¶¶ 18-19. The director has 60 days to determine if the application meets the requirements of Section 19.31.22.8 and to make a written determination and recommendation or a written rejection to the commission. *Id.* ¶¶ 19-20. Upon the director's recommendation, the commission shall hear the matter at a regular or special meeting. *Id.* ¶ 20. Within 60 days of the commission's meeting, the commissioner "shall issue its written final agency action and decision with the factual and legal basis for that decision." *Id.* ¶ 21. If the commission finds that a segment should be designated a non-navigable public water, then the director must issue the certificate immediately following the written final agency decision. *Id.* In accordance with the process, the Game Commissioner has certified a number of rivers and streams as being non-navigable and granted a number of applications submitted by similarly situated landowners. *Id.* ¶¶ 22, 45.

Plaintiff River Bend Ranch submitted an application for certification to Director Sloane on September 27, 2019 that complied with all requirements of Section 19.31.22. *Id.* ¶¶ 23-24. On November 25, 2019, Director Sloane issued a letter to the Commission regarding applications by Plaintiffs River Bend Ranch and Canones, stating that "[w]hile the application provides similar information to applications approved by the previous Commission, given recent advice by the Office of the Attorney General regarding 19.31.22 NMAC and recent Commission direction, I cannot recommend approval of the application." *Id.* ¶¶ 25, 27. For their part, River Bend Ranch and Canones sent correspondence to the Director demanding that he provide the Commission

with a recommendation of approval or rejection as Section 19.31.22 requires; the Director failed to respond. *Id.* ¶¶ 26, 28.

Similar to Plaintiff River Bend Ranch, Plaintiff Rancho del Oso Pardo also submitted an application to Director Sloane (sent November 20, 2019) that complied with all the requirements of Section 19.31.22. *Id.* ¶¶ 29-30. Plaintiff Rancho del Oso Pardo, however, received a different outcome. On January 19, 2020, Director Sloane issued a formal recommendation on Rancho del Oso Pardo's application, stating that "the application, as submitted, provides the information required by the Landowner Certification of Non-navigable Water Rule 19.31.22 NMAC [and] I have determined and recommend, pursuant to the current rule and the application, that the Rancho del Oso Pardo, Inc., segment of the Chama River be designated as a non-navigable public water." *Id.* ¶ 31.

After receiving their respective letters from Director Sloane, Plaintiffs River Bend Ranch, Canones, and Rancho del Oso Pardo sent correspondence to the Commission and each of the Commissioners requesting that the Commission schedule a meeting, which it never did. *Id.* ¶ 32. However, on March 4, 2020, Director Sloane filed a Declaratory Judgment Action in state district court that asks the state court to "address[] the legal question of whether, and under what circumstances, a private landowner may exclude members of the public from fishing in public waterways that flow through the landowners' property," but does not ask the court to invalidate Section 19.31.22. *Fenn Farm*, Doc. 1-1 ¶¶ 29-30.[4] Five days later, on March 9, 2020, the Commission placed a banner on the "Landowner Certification of Non-Navigable Water Segment" section of its webpage, stating that "The Department is not currently considering any

---

[4] The court in the Declaratory Judgment Action has not issued any stay of the regulation or other ruling that relieves Defendants of their duties under Section 19.31.22. *Id.* ¶ 31.

new applications under this program (Effective 04-09-2020)." *Rancho*, Doc. 1-1 ¶ 33.

Accordingly, Plaintiffs believe that the Commission does not intend to act in accordance with the

regulation in relation to Plaintiffs' applications. *Id.* ¶ 34.

Despite this posting, on March 13, 2020, Plaintiff Fenn Farm attempted to hand-deliver a

completed application to the Commission, which the Commission refused to accept. *Fenn Farm*,

Doc. 1-1 ¶ 25. That same day, Fenn Farm transmitted its application by email to Director Sloane,

from whom it has yet to receive a response. *Id.* ¶ 26.[5] Plaintiff Three Rivers Ranch has not

submitted an application because, based on the Department's treatment of the Fenn Farm

application, it anticipates that its application would be rejected summarily. *Id.* ¶ 28.

Although they have taken slightly different paths, all Plaintiffs arrive to this lawsuit with

a common allegation: Defendants' refusal to act on Plaintiffs' application poses a threat to their

private property rights and has caused damage to Plaintiffs in the form of a diminution in value

of their property holdings and interference in and disruption of their right to the quiet and

peaceful enjoyment of their property. *Rancho*, Doc. ¶¶ 43-44; *Fenn Farm*, Doc. 1-1 ¶¶ 39-40.

### 2.  Procedural Background

The March 4, 2020 declaratory judgment action Director Sloane filed in state district

court is not the only state court case that precedes the federal lawsuits currently at issue. Much

more significantly, on March 13, 2020, the Adobe Whitewater Club of New Mexico, the New

Mexico Wildlife Federation, and the New Mexico Chapter of Backcountry Hunters & Anglers

filed a Petition for Mandamus in the New Mexico Supreme Court seeking a decision on whether

---

[5] The Department and Director Sloane attached to their Motion to Dismiss in the *Fenn Farm* case
a letter from Director Sloane, recommending that the Commission accept Plaintiff Fenn Farm's
application. *Fenn Farm*, Doc. 4-1. In response, Plaintiffs allege that this recommendation was
made "in secret and as a result of this litigation." *Fenn Farm*, Doc. 18 at 2.

Section 19.31.22 is constitutional under the New Mexico Constitution. *Adobe Whitewater*, No. S-1-SC-38195.

The present federal lawsuits may be the ripple product of the splash created by this New Mexico Supreme Court Petition. The first of the lawsuits now before the Court took shape on April 14, 2020, when Plaintiffs Rancho Del Oso Pardo, Inc., River Bend Ranch, LLC, and Chama III, LLC filed a state district court suit against the Department, Director Sloane, the Commission, and the Commissioners. *Rancho*, Doc. 1-1. The lawsuit came to federal court when the Department and Director Sloane removed it from state court on May 5, 2020. *Rancho*, Doc. 1. In this lawsuit, Plaintiffs seek a writ of mandamus, or in the alternative declaratory judgment, in the form of an order compelling Defendants to comply with Section 19.31.22. *Id*. They also bring three claims for damages under Section 1983: denial of substantive due process, denial of equal protection, and civil conspiracy. *Id*.

The second of the lawsuits now before the Court took life on May 8, 2020, when Plaintiffs Fenn Farm and Three Rivers Cattle, LTD[6] filed suit in state district court against the same sets of Defendants. *Fenn Farm*, Doc. 1-1. Once again, the Department and Director Sloane removed to federal court (on May 14, 2020). *Fenn Farm*, Doc. 1. The *Fenn Farm* Plaintiffs seek the same relief as the *Rancho* Plaintiffs. *Fenn Farm*, Doc. 1-1. Thus, the Court has consolidated the cases. *Fenn Farm*, Doc. 20 (Order entered June 29, 2020, designating the *Rancho* case as the "lead" case).[7]

---

[6] In their Complaint, Plaintiffs refer to Three Rivers Cattle as Three Rivers Ranch, so the Court does the same in this opinion.

[7] Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), all parties in both cases consented to me serving as the presiding judge and entering final judgment in these consolidated cases. *See Rancho*, Docs. 14, 15, 16; *Fenn Farm*, Docs. 24, 25, 26, 27, 28, 29.

All Defendants seek to stay the federal court proceedings until after the New Mexico Supreme Court issues a decision in the *Adobe Whitewater* case. *Rancho*, Docs. 6, 9; *Fenn Farm* Docs. 5, 6. As represented in the Commission Defendants' brief, the argument in support of the stay common to all Defendants is that, "[t]he New Mexico Supreme Court lawsuit raises substantially similar issues to those of Plaintiffs' claims here, so that the disposition of the Supreme Court proceeding will either moot or substantially change the posture of the claims for resolution in this case." *Rancho*, Doc. 6 at 2.

As an alternative to this stay argument, the Department and Director Sloane sought a stay of discovery pending the Court's decision on whether qualified immunity protects them from this lawsuit. *Rancho*, Doc. 9; *Fenn Farm*, Doc. 5. Judge Khalsa granted the portion of the Motions to Stay related to discovery. *Rancho*, Doc. 28. Specifically, she stayed discovery in both consolidated cases pending resolution of Defendant Sloane's qualified immunity defense raised in the second set of motions filed – the Motions to Dismiss the Department and Director Sloane have filed in the consolidated cases. *Id.*

In these motions, the Department and Director Sloane assert qualified immunity. *Rancho*, Docs. 7, 8; *Fenn Farm*, Docs. 3, 4. They argue they are immune from the Section 1983 damages claims because the Complaints fail to allege any conduct that violates a statutory or constitutional duty and fail to allege any violations of a statutory or constitutional duty about which the Department or Director Sloane reasonably should have known. *Rancho*, Doc. 8 at 5; *Fenn Farm*, Doc. 4 at 4-5. In addition to asserting qualified immunity, the Department and Director Sloane argue that the Court should dismiss Plaintiffs' claims for mandamus relief and declaratory judgment because they have carried out their duties under Section 19.31.22 and

because mandamus is not appropriate while the validity of Section 19.31.22 is pending before the New Mexico Supreme Court. *Rancho*, Doc. 8 at 4; *Fenn Farm*, Doc. 4 at 4.

Finally, on September 30, 2020, after the parties completed briefing on the Motions to Stay and Motions to Dismiss, Plaintiffs filed a Motion for Consideration of Newly Discovered Evidence Relevant to Pending Motions. *Rancho*, Doc. 46. Plaintiffs argue that the Court should consider newly discovered documents when deciding the pending motions.

Thus, to summarize, presently before the Court are (1) the Commission and Commissioners' Motion to Stay filed in the *Rancho* case (Doc. 6); (2) the Department and Director Sloane's Motion to Stay filed in the *Rancho* case[8] (Doc. 9); (3) the Department and Director Sloane's Motion to Stay filed in the *Fenn Farm* case (Doc. 5); (4) the Department and Director Sloane's Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed in the *Rancho* case (Doc. 7); (5) the Department and Director Sloane's Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed in the *Fenn Farm* case (Doc. 3); and (6) Plaintiffs' Motion for Consideration of Newly Discovered Evidence Relevant to Pending Motions filed in the *Rancho* case (Doc. 46).

## LEGAL STANDARD

### 1. 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for failure to state a claim upon which the court can grant relief. "[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, to state a claim to

---

[8] As noted above, Judge Khalsa granted the portion of this Motion related to staying discovery pending resolution of Defendant Sloane's qualified immunity defense. Therefore, the Court presently need only decide whether to stay this action pending resolution of the *Adobe Whitewater* case.

relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a complaint does not require detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

A court considering a challenge under Rule 12(b)(6) may proceed according to a "two-pronged approach." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, a court "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

For purposes of this second prong, the Court "accept[s] the well-pled factual allegations in the complaint as true, resolve[s] all reasonable inferences in the plaintiff's favor, and ask[s] whether it is plausible that the plaintiff is entitled to relief." *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013) (internal citations and quotation marks omitted). "A claim is facially plausible when the allegations give rise to a reasonable inference that the defendant is liable." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). The court's consideration, therefore, is limited to determining whether the complaint states a legally sufficient claim upon which the court can grant relief. *See Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The court is not required to accept conclusions of law or the asserted application of law to the alleged facts. *See Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994). Nor is the Court required to accept as true legal conclusions that are masquerading as

factual allegations. *See Brooks v. Sauceda*, 85 F. Supp. 2d 1115, 1123 (D. Kan. 2000). The Court

must, however, view a plaintiff's allegations in the light most favorable to him. *Schrock v.*

*Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013).

### 2. Qualified Immunity

Qualified immunity protects public officials from liability "insofar as their conduct does

not violate clearly established statutory or constitutional rights of which a reasonable person

would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982)). In order to defeat qualified immunity, a plaintiff must

assert facts that rebut the presumption of the officer's immunity from suit. *Medina v. Cram*, 252

F.3d 1124, 1130 (10th Cir. 2001). The plaintiff carries the burden of showing that (1) the officer

violated a constitutional or statutory right and (2) the right was clearly established when the

alleged violation occurred. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002);

*Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). A court may address these prongs in

either order, *Pearson*, 555 U.S. at 236, but a plaintiff must satisfy both in order to avoid qualified

immunity, *Olsen*, 312 F.3d at 1304. As with other motions to dismiss, to survive a motion to

dismiss based on qualified immunity, a complaint must contain sufficient factual matter,

accepted as true, to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 677.

A right is clearly established if "[t]he contours of the right [are] sufficiently clear that a

reasonable official would understand that what he is doing violates that right." *Anderson v.*

*Creighton*, 483 U.S. 635, 640 (1987). The action at issue need not have been previously declared

unlawful, but its unlawfulness must be evident in light of preexisting law. *Beedle v. Wilson*, 422

F.3d 1059, 1069 (10th Cir. 2005). Unlawfulness is generally demonstrated "when there is

controlling authority on point or when the clearly established weight of authority from other

courts supports plaintiff's interpretation of the law." *Id.* at 1069-70 (internal quotation marks omitted). "A prior case need not have identical facts," *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017), but the precedent must make it clear "to every reasonable officer . . . that what he is doing violates that right," *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation marks omitted). The plaintiff bears the burden of identifying "a controlling case or robust consensus of cases" where an officer acting "under similar circumstances" to those faced by the defendants was found to have acted unlawfully. *D.C. v. Wesby*, 138 S. Ct. 577, 591 (2018); *Quinn v. Young*, 780 F.3d 998, 1013 (10th Cir. 2015).

In recent years, the Supreme Court "has issued a number of opinions reversing federal courts in qualified immunity cases." *White v. Pauly*, 137 S. Ct. 548, 551 (2017). "The Court has found this necessary both because qualified immunity is important to society as a whole, and because as an immunity from suit, qualified immunity is effectively lost if a case is erroneously permitted to go to trial." *Id.* (internal quotation marks and citations omitted). "[T]he defense of qualified immunity gives public officials the benefit of legal doubts." *Donovan v. City of Milwaukee*, 17 F.3d 944, 951 (7th Cir. 1994) (internal quotation marks omitted).

## ANALYSIS

Plaintiffs' Complaints bring five claims for relief: (1) writ of mandamus; (2) declaratory judgment; (3) denial of substantive due process under Section 1983; (4) denial of equal protection under Section 1983; (5) civil conspiracy under Section 1983. *Rancho*, Doc. 1-1; *Fenn Farm*, Doc. 1-1. In their Motions to Dismiss, the Department and Director Sloane argue the Court should dismiss all claims against them, raising the defense of qualified immunity as to the Section 1983 claims.

As an initial matter, the Department and Director Sloane argue that the Commission, not the Department or the Director, has final decision-making authority under Section 19.33.22. Therefore, they assert, Plaintiffs' Section 1983 claims that the Department and Director Sloane refused to grant their certifications should fail. *Rancho*, Doc. 18 at 7-8 (citing *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207 (10th Cir. 2000) for the proposition that Plaintiffs cannot state a substantive due process claim against them because they do not have "final policymaking authority"). However, Plaintiffs allege facts that, taken as true, demonstrate that Director Sloane has a duty under the regulation to make initial recommendations on applications, that he failed to respond to one application (Fenn Farm) and, despite finding all the requirements were met, failed to recommend approval of two others (River Bend Ranch and Canones). Thus, Plaintiffs allege that the Director's refusal to complete duties the regulation requires him to complete prevented the applications from proceeding to the next stage in the process. Accordingly, regardless of whether he is the final decision maker, the Director controls the gate through which applications must travel before they arrive to the Commission. By closing this gate, the Director can effectively deny the applications. Based on Defendants' allegations that the Director closed a gate Section 19.33.22 required him to keep open, the Court rejects the Department and Director Sloane's argument that Plaintiffs' Section 1983 claims against them must be dismissed because they are not the final decision makers.

Turning to the next issue, because the Department and Director Sloane have raised qualified immunity, in accordance with guidance from the Tenth Circuit, the Court will address it before any other matters. "Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. The privilege is an immunity from suit rather than a mere defense to liability . . . ." *Jiron v. City of Lakewood*, 392 F.3d 410, 414 (10th Cir. 2004) (internal quotation

marks and citation omitted). "Accordingly, qualified immunity questions should be resolved at the earliest possible stage of litigation." *Id.* Plaintiffs argue that the case can go forward while the qualified immunity motion is pending because Director Sloane will still be a party "with respect to Plaintiffs' claim for mandamus relief." *Rancho*, Doc. 19 at 24. Judge Khalsa rejected this argument as related to discovery, concluding that a stay only as to the Section 1983 claim, scarcely being a stay at all, would fail to protect Director Sloane from the burden of discovery. *Rancho*, Doc. 28 at 5. Now going beyond the context of discovery, the Court similarly declines to set qualified immunity to the side so that Plaintiffs' other claims may proceed unabated. Instead, consistent with above-cited precedent, the Court will place the issue of qualified immunity at the forefront.

Beginning with qualified immunity impacts this case in two ways. First, the Court will not address Defendants' mandamus argument until after it resolves the question of qualified immunity. Second, resolving the issue of qualified immunity clears the path for the consolidated cases to proceed. Accordingly, the Court will deny the Motions to Stay. This denial is consistent with the Court's broad discretion to stay or refuse to stay proceedings incident to its power to manage its docket. *See Clinton v. Jones*, 520 U.S. 681, 706 (1997); *see also Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) (holding that the district court has inherent authority to manage its docket "with a view toward the efficient and expedient resolution of cases."); *Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1080 (10th Cir. 2009) ("We review a district court's decision to grant or deny a motion to stay proceedings for abuse of discretion."). Further, in proceeding with its qualified immunity analysis, the Court notes that a decision in *Adobe Whitewater* (which concerns state constitutional law) is not needed for this Court to address

14

qualified immunity as to Plaintiffs' Section 1983 claims (which implicate federal constitutional law).

Lastly, the Court begins its qualified immunity analysis by noting that the defense of qualified immunity is only available to government officials in their individual capacities; it is not available to agencies. *See, e.g.*, *Beedle*, 422 F.3d at 1069 ("a governmental entity may not assert qualified immunity from a suit for damages[; a] qualified immunity defense is only available to parties sued in their individual capacities"). This is significant because the Department and Director Sloane both invoke the qualified immunity doctrine, arguing that its application requires dismissal of the Section 1983 claims against them. *See Rancho*, Doc. 24 at 3 ("the due process and equal protection claims must be dismissed against the Department and Director Sloane under qualified immunity"). Because the Department is not entitled to qualified immunity, the Court will first address the Section 1983 claims against Director Sloane and will consider whether Director Sloane, in his individual capacity, is entitled to qualified immunity. The Court will next address the Section 1983 claims against the Department by simply considering whether Plaintiffs have stated a claim upon which the Court can grant relief against the Department.

### 1. Civil Conspiracy

Plaintiffs allege a civil conspiracy deprived them of their constitutional rights, in violation of Section 1983. *Rancho*, Doc. 1-1 ¶¶ 70-72; *Fenn Farm*, Doc. 1-1 ¶¶ 67-69. Though Plaintiffs are not explicit as to which defendants this claim is brought against, they do state that "[t]wo or more members of the New Mexico Game Commission have combined through undisclosed agreements among themselves to deprive Plaintiffs of their constitutional and statutory rights." *Rancho*, Doc. 1-1 ¶ 71; *Fenn Farm*, Doc. 1-1 ¶ 68.

In their Motions to Dismiss, the Department and Director Sloane argue that Plaintiffs' civil conspiracy claim should be dismissed with prejudice as to them because "Plaintiffs did not name the Department or Director Sloane as parties to the civil conspiracy." *Rancho*, Doc. 8 at 23; *Fenn Farm*, Doc. 4 at 22. In response, Plaintiffs clarify that the "civil conspiracy claim is not directed at [the Department or Director Sloane]. Dismissal is thus unnecessary, as the Complaint makes clear that the Department and the Director are not the subject of that claim."[9] *Rancho*, Doc. 20 at 14; *Fenn Farm*, Doc. 18 at 19. Given Plaintiffs' acknowledgment that they are not bringing civil conspiracy claims against the Department and Director Sloane, the Court need not address the Department and Director Sloane's arguments on this topic.

## 2. Substantive Due Process

Plaintiffs allege that they have "fundamental rights under the Fourteenth Amendment to the United States Constitution to acquire, use, maintain and enjoy their private property." *Rancho*, Doc. 1-1 ¶ 59. Defendants, they assert, are violating Plaintiffs' substantive due process rights by "refusing to grant certificates to Plaintiffs pursuant to the Rule, [and by] preventing Plaintiffs from preserving a valuable property interest that assists with the enforcement of existing trespass laws and maintains and adds to the value of Plaintiffs' property." *Id.* ¶ 60. They maintain that Defendants, including the Department and Director Sloane, are liable for money damages under Section 1983 for this conduct. *Id.* ¶¶ 61-64. As discussed above, the Court first

---

[9] In their Motion for Consideration of Newly Discovered Evidence Relevant to Pending Motions, Plaintiffs allege that they have new information showing that Director Sloane may have participated in the conspiracy at issue and "will thus be preparing papers to include Director Sloane in their conspiracy claim." *Rancho*, Doc. 46 at 6. The Court need not presently address this statement because Plaintiffs have not yet moved to amend on this ground.

proceeds to address whether qualified immunity protects Director Sloane from this Section 1983 allegation.

The Court starts by considering the first prong of qualified immunity; that is, whether Plaintiffs' Complaints contain enough facts, taken as true, to state a plausible claim that Director Sloane violated Plaintiffs' constitutional right to substantive due process. Plaintiffs' substantive due process claim against Director Sloane has two components. The first is that Director Sloane failed to take the actions a duly enacted regulation mandates he take. Rather than just alleging Director Sloane failed to follow a duly enacted regulation, however, Plaintiffs' allegations also contain a plus component – that the result of Director Sloane's failure to follow a duly enacted regulation is to deprive Plaintiffs of some value of their property.[10]

Importantly, to defeat Director Sloane's assertion of qualified immunity, Plaintiffs must do more than allege Director Sloane did not follow a duly enacted law or regulation. To state a Section 1983 substantive due process claim, Plaintiffs must show that Director Sloane's actions (or lack of action) "shock[s] the conscience." *Uhlrig v. Harder*, 64 F.3d 567, 571 (10th Cir. 1995). To allege that Director Sloane wrongly failed to comply with a regulation, standing alone, does not meet this standard. "[T]he Due Process Clause is not a guarantee against incorrect or ill-advised [government] decisions." *Id.* at 573 (internal quotation omitted). "[T]o satisfy the 'shock

---

[10] Such claims are sometimes characterized as regulatory takings. Plaintiffs here, however, bring no regulatory takings claim and acknowledge that "Director Sloane's actions have not yet risen to the level required to establish a constitutional taking of property." *Rancho*, Doc. 20 at 18; *Fenn*, Doc. 18 at 23. Further, the United States Supreme Court has indicated that, although it remains an open question whether arbitrary government action that deprives a person of value in his/her property might violate that person's substantive due process rights, such conduct does not implicate the Takings Clause. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 543 (2005); *see also id.* at 548 ("today's decision does not foreclose the possibility that a regulation might be so arbitrary or irrational as to violate due process") (Kennedy, J., concurring).

the conscience' standard, a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power. That is, the plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Id.* at 574.[11]

On these 12(b)(6) Motions to Dismiss, the Court has considered whether the facts in the Complaints, taken as true, allege action or inaction by Director Sloane that was conscience shocking. It concludes no such facts are present. The facts in the Complaints allege that Director Sloane issued a letter to the Commission on River Bend Ranch's and Canones's applications, stating he "cannot recommend approval of the application" based on recent advice by the Attorney General's Office and provided no further recommendation to the Commission on those applications. *Rancho*, Doc. 1-1 ¶¶ 25-28. Director Sloane further issued a recommendation on Rancho del Oso Pardo's application, recommending the application be accepted. *Id.* ¶ 31. After that, Fenn Farm emailed its application to Director Sloane but has not received a response.[12] *Fenn Farm*, Doc. 1-1 ¶ 26. These facts might show a failure to follow Section 19.31.22 in some instances, but they do not rise to the level of conscience shocking. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) ("[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking

---

[11] Thus, because the standards are different, it is possible that Plaintiffs could succeed on their action for a writ of mandamus but fail on their Section 1983 action.

[12] Relying on the Commission's communication and the Director's apparent refusal to accept Fenn Farm's application, Three Rivers Ranch did not attempt to submit its application and so the Director has taken no action as to Three Rivers Ranch. *Fenn Farm*, Doc. 1-1 ¶ 28.

level."). As such, Plaintiffs have failed to state a plausible claim the Director Sloane violated their constitutional right to substantive due process.[13]

Moreover, even assuming Director Sloane's actions violated Plaintiffs' constitutional right to substantive due process, Director Sloane is entitled to qualified immunity because, as necessary under the second prong of the test, Plaintiffs have not shown that their constitutional right was clearly established when the alleged violation occurred. A plaintiff seeking to overcome a qualified immunity defense bears the burden of identifying "a controlling case or robust consensus of cases" where an officer acting "under similar circumstances" to those faced by defendants was found to have acted unlawfully. *Wesby*, 138 S. Ct. at 591; *Quinn*, 780 F.3d at 1013. "A prior case need not have identical facts." *Patel*, 849 F.3d at 980. The Supreme Court has made clear, however, that "clearly established law should not be defined at a high level of generality" and "must be particularized to the facts of the case." *Pauly*, 137 S. Ct. at 552 (internal quotation marks omitted).

Plaintiffs do not cite any specific, controlling cases. Instead, they cite Supreme Court cases to generally support their argument that "Director Sloane's conduct has a significant impact on Plaintiffs' constitutionally protected property rights." *Rancho*, Doc. 20 at 17 (citing *United States v. Salerno*, 481 U.S. 739, 746 (1987); *Lewis*, 523 U.S. at 847; and *Kaiser Aetna v. United States*, 444 U.S. 164, 176 (1979)); *Fenn Farm*, Doc. 18 at 22 (same). None of the cited

---

[13] In their briefing, the parties discuss a series of letters and memos from the New Mexico Attorney General's Office ("NMAG"). Because these letters are not discussed or incorporated into the Complaint, the Court does not consider them in ruling on these 12(b)(6) Motions to Dismiss. *See GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (holding that a Rule 12(b)(6) motion must be converted to a motion for summary judgment if the court considers matters outside the pleadings, with the exception of documents incorporated by reference or attached to the complaint or documents referred to in the complaint and central to a claim).

cases involve a government official acting under similar circumstances or apply to the conduct in question. Thus, the cases Plaintiffs cite are insufficient to make clear to a reasonable official in Director Sloane's position that his alleged conduct would violate Plaintiffs' substantive due process rights. *See A.N. ex rel. Ponder v. Syling*, 928 F.3d 1191, 1198 (10th Cir. 2019) ("General statements of the law can clearly establish a right for qualified immunity purposes if they apply with obvious clarity to the specific conduct in question.").

The closest Plaintiffs come to citing a case with an analogous fact pattern is their citation to the Ninth Circuit case of *Crown Point Development, Inc. v. City of Sun Valley*, 506 F.3d 851 (9th Cir. 2007). *Rancho*, Doc. 20 at 17; *Fenn Farm*, Doc. 18 at 23. This case, however, fails to place Director Sloane on notice for at least three reasons. First, although the Ninth Circuit acknowledged that the plaintiff's allegations raised a substantive due process issue rather than a takings issue, the Ninth Circuit never actually concluded that the alleged conduct violated the plaintiff's substantive due process rights. Second, even if the Ninth Circuit had found a substantive due process violation in *Crown Point*, the facts of that case are too dissimilar to place a reasonable official in Director Sloane's position on notice that his conduct would violate Plaintiffs' substantive due process rights. Third, even if *Crown Point* involved a substantive due process finding and was directly on point, a single, out-of-circuit case (being neither from the Supreme Court nor the Tenth Circuit) that does not represent a robust consensus of cases cannot satisfy the notice requirement in the second prong of a qualified immunity analysis. *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1032 n.4 (10th Cir. 2020).

Turning to the specific facts of *Crown Point*, the plaintiff (Crown Point Development) was developing a residential subdivision in Sun Valley, Idaho. 506 F.3d at 853. This development carried a minimum density requirement, requiring Crown Point to build 39 total

units on the property. *Id.* After building 26 units during Phases 1 through 4, Crown Point

proposed to construct 13 townhouse units in Phase 5 to satisfy the density requirement. *Id.* The

Sun Valley Planning and Zoning Commission approved Crown Point's application for Phase 5,

but the city council denied it after residents and the Crown Ranch Homeowners' Association

expressed dissatisfaction. *Id.* Crown Point appealed to state court, which found that the city

council's denial of Crown Point's application was arbitrary and capricious. *Id.* Crown Point then

filed suit under Section 1983, arguing that the city council violated its right to substantive due

process by arbitrarily interfering with its property rights when it denied Crown Point's Phase 5

application without any evidence in support. *Id.*

Thus, *Crown Point* involved allegations that a local government's denial of a developer's

requested construction diminished the value of the developer's property in violation of the

developer's substantive due process rights. The present case, in contrast, involves allegations that

a state official's refusal to follow a duly enacted regulation has the effect of allowing trespass on

a property owner's land that diminishes the value of that land in violation of the property

owner's substantive due process rights. *Rancho*, Doc. 1-1 ¶¶ 37, 44, 60; *Fenn Farm*, Doc. 1-1 ¶¶

34, 39, 57. True, both cases involve an allegation that a government official's action or inaction

had the ultimate effect of diminishing the value of a plaintiff's property. The Supreme Court,

however, has repeatedly cautioned against defining clearly established law "at a high level of

generality." *Pauly*, 137 S. Ct. at 552. Arguably, had the Ninth Circuit found a substantive due

process violation in *Crown Point*, the case would be useful to analyzing whether, under the *first*

*prong* of a qualified immunity analysis, a constitutional violation occurred. But, under *the second*

*prong* of a qualified immunity analysis, the facts in *Crown Point* are too dissimilar to the facts in

the present case to place Director Sloane on clear notice that his conduct would violate Plaintiffs' substantive due process rights.

More importantly, however, the court in *Crown Point* did not even find that the plaintiff's substantive due process right had been violated. Instead, the court simply concluded that the Takings Clause did not foreclose the plaintiff's substantive due process claim. *Id.* at 856-57 ("Crown Point's substantive due process theory is not foreclosed altogether."). Finally, even had the Ninth Circuit gone a step further and concluded that the city violated the plaintiff's substantive due process rights, there is no evidence that *Crown Point* represents a robust consensus of cases. Accordingly, Plaintiffs' citation to *Crown Point* falls far short of clearly establishing that Director Sloane's alleged conduct violated Plaintiffs' substantive due process rights.

For these reasons, the Court finds that Plaintiffs have failed to state a plausible claim that Director Sloane violated Plaintiffs' constitutional right to substantive due process and have failed to establish that any such right was clearly established. Therefore, qualified immunity shields Director Sloane from Plaintiffs' Section 1983 substantive due process claim.

### 3. Equal Protection

Plaintiffs allege they have been denied equal protection under the Fourteenth Amendment and bring a claim against the Department and Director Sloane under Section 1983. *Rancho*, Doc. 1-1 ¶¶ 65-69; *Fenn Farm*, Doc. 1-1 ¶¶ 62-66. Specifically, they allege that, although their applications were not properly processed and considered, "Defendants . . . granted a number of Applications submitted by other similarity situated owners of private property along non-navigable rivers or streams." *Rancho*, Doc. 1-1 ¶ 45; *Fenn Farm*, Doc. 1-1 ¶ 41; *see also Rancho*, Doc. 1-1 ¶ 22; *Fenn Farm*, Doc. 1-1 ¶ 24. This action, Plaintiffs assert, violates their

right to equal protection: "[t]he granting by Defendants of Applications submitted by other similarly situated owners of private property along non-navigable rivers or streams, and the refusal to act upon or denial of Plaintiffs' Applications, without any rational basis, is discriminatory and in violation of the Fourteenth Amendment to the United States Constitution." *Rancho*, Doc. 1-1 ¶ 67; *Fenn Farm*, Doc. 1-1 ¶ 64. As discussed above, the Court reiterates that the defense of qualified immunity is only available to individuals and only one individual has raised this defense: Director Sloane. As such, the Court will first address whether Director Sloane is entitled to qualified immunity on Plaintiffs' equal protection claim.

The Court begins its analysis with the first prong of qualified immunity: do Plaintiffs' Complaints contain enough facts, taken as true, to state a plausible claim that Director Sloane violated Plaintiffs' constitutional right to equal protection? Plaintiffs acknowledge that they are not a protected class and, therefore, press their equal protection claim under a "class-of-one" theory. *Rancho*, Doc. 20 at 10; *Fenn Farm*, Doc. 18 at 16. "In the paradigmatic class-of-one case, a public office inflicts a cost or burden on one person without imposing it on those who are similarly situated in material respects, and does so without any conceivable basis other than a wholly illegitimate motive." *Jicarilla Apache Nation v. Rio Arriba Cnty.*, 440 F.3d 1202, 1209 (10th Cir. 2006). A "class-of-one" equal protection claim requires the plaintiff to plausibly allege that it has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). In other words, the plaintiff carries a "substantial burden" to establish two criteria: "a plaintiff must first establish that others similarly situated in every material respect were treated differently." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216-17 (10th Cir. 2011) (internal quotation marks and citations omitted). Second, a plaintiff must show "this

difference in treatment was without rational basis, that is, the government action was irrational and abusive, and wholly unrelated to any legitimate state activity." *Id.* at 1216 (internal quotations and citations omitted). "This standard is objective – if there is a reasonable justification for the challenged action, we do not inquire into the government actor's actual motivations." *Id.*

Looking at the first criterion – whether Director Sloane intentionally treated Plaintiffs differently than others similarly situated – Plaintiffs' class-of-one claim misses the mark. These consolidated cases involve the similar claims of five separate plaintiffs. Each Plaintiff argues: although a duly enacted regulation requires Director Sloane to accept their applications, conduct an analysis of whether the application requirements are met, make a recommendation, and forward the application and his recommendation to the Commission, Director Sloane in some instances refused to do so. By ignoring the regulation, Plaintiffs assert that Director Sloane is singling them out in violation of the Equal Protection Clause. However, viewed collectively, Plaintiffs' equal protection claim is a class-of-five claim rather than a class-of-one claim. Plaintiffs have cited no authority that supports the notion that a group of similarly situated entities can successfully join forces and be treated as one unit for purposes of a class-of-one claim.

The Plaintiffs' cases are unique in the sense that they allege their applications (or in the case of Three Rivers Ranch, decision not to apply) were stalled at different stages of the application process. For all of them, however, the essence of their claim is the same: Defendants are now refusing to fully process their application as the Rule requires. *See Fenn Farm*, Doc. 18 at 3 (arguing in support of mandamus that "the underlying legal issue – whether Defendants are obligated to comply with a validly promulgated regulation – is identical"). Plaintiffs have

provided no facts to establish that, after the Commission placed a banner on its website saying the Department would not be accepting new applications, *any* application has been fully processed. *Rancho*, Doc. 1-1 ¶ 33 ("On or about March 9, 2020, and without any public notice or hearing, the Commission placed a banner on the 'Landowner Certification of Non-Navigable Water Segment' section of its webpage stating that 'The Department is not currently considering any new applications under this program.'"); *Fenn Farm*, Doc. 1-1 ¶ 27 (same). Further, Plaintiffs all seek the same mandamus relief – an Order requiring Defendants to follow the regulation and process their applications. Indeed, their mandamus claims are all centered around the allegation that Defendants are not fully processing *any* applications. Viewed collectively, the similarity between the Plaintiffs' respective claims undermines their individual claims that Director Sloane singled them out and treated them differently without any conceivable basis other than a wholly illegitimate motive. To the contrary, and fatal to their class-of-one equal protection claim, each Plaintiff appears to have been treated similarly to the other four Plaintiffs. In other words, no Plaintiff has sufficiently alleged that it alone is being "singled out by the government." *Kansas Penn Gaming*, 656 F.3d at 1217 (quoting *Engquist v. Or. Dep't of Agr.*, 553 U.S. 591, 602 (2008)).

This raises the question of whether, as a result of the different points at which the various applications stalled, the Court should analyze each Plaintiff's class-of-one claim separately. Reviewing each Plaintiff's claim separately reveals that, although the point at which each application stalled might create some variance in how each individual Plaintiff's class-of-one claim is analyzed, no Plaintiff sufficiently states a claim.

River Bend Ranch and Canones argue that Director Sloane stalled their applications when he informed the Commission that he could not recommend approval of their applications.

*Rancho*, Doc. 1-1 ¶¶ 25, 27. These assertions, however, fail to state a class-of-one claim because Director Sloane treated River Bend Ranch and Canones the same. Further, except for Rancho del Oso Pardo, Plaintiffs' Complaints indicate that Director Sloane has not processed any applications since he refused to process the applications of River Bend Ranch and Canones. *Rancho*, Doc. 1-1 ¶ 33 (discussing the notice on the website that new applications are not being accepted); *Fenn Farm*, Doc. 1-1 ¶ 27 (same).

Similar to River Bend Ranch and Canones, Fenn Farm alleges Director Sloane failed to respond to its application in that he failed to deny or recommend acceptance of its application. *Fenn Farm*, Doc. 1-1 ¶ 26.[14] Thus, for the same reasons that apply to River Bend Ranch and Canones, Fenn Farm has failed to state a class-of-one equal protection claim against Director Sloane.

In support of their disparate treatment argument, Plaintiffs do allege that, prior to receiving any of their applications, Director Sloane processed applications of others, as Section 19.31.22 requires. *Rancho*, Doc. 1-1 ¶ 22; *Fenn Farm*, Doc. 1-1 ¶ 24. Plaintiffs allege that Director Sloane acknowledged as much to the Commission when he explained why he felt he could not recommend approval of River Bend Ranch's and Canones's applications. *Rancho*, Doc. 1-1 ¶¶ 25, 27 (explaining that his decision to no longer process applications was based on "advice of the Office of the Attorney General regarding 19.31.11 NMAC and recent Commission

---

[14] As noted in the factual background section above, the Department and Director Sloane attached to their Motion to Dismiss in the *Fenn Farm* case a letter from Director Sloane, recommending that the Commission accept Plaintiff Fenn Farm's application. *Fenn Farm*, Doc. 4-1. Because this information was not in Plaintiffs' Complaint and because the Court is already finding in favor of Defendant Sloane in connection with Plaintiffs' class-of-one claim, the Court does not consider this additional information the Department Defendants have submitted. Moreover, even assuming Director Sloane processed Fenn Farm's application, this would just put Fenn Farm in a position similar to Rancho del Oso Pardo, which has also failed to state a claim.

direction . . ."). Plaintiffs further argue that Director Sloane's stated reliance on this NMAG communication was unjustified. Resolution of the first criterion of Plaintiffs' equal protection claim, however, does not turn on whether Director Sloane justifiably relied on this NMAG communication. More important than whether Director Sloane's reliance on the communication was justified is whether Director Sloane treated applicants the same after receiving this communication. The only applicant Plaintiffs allege Director Sloane treated differently after receiving this communication is Rancho del Oso Pardo, whose application Director Sloane processed.

But nowhere does any Plaintiff argue that it has stated a class-of-one equal protection claim against Director Sloane based on his disparate treatment of Rancho del Oso Pardo. To the contrary, River Bend Ranch and Canones make the exact same equal protection arguments as Rancho del Oso Pardo. *See Rancho*, Doc. 20 at 9-1. Likewise, Fenn Farm and Three Rivers Ranch make equal protection arguments that are identical to each other and similar to those River Bend Ranch, Canones, and Rancho del Oso Pardo make. *See Fenn Farm*, Doc. 18 at 16-18 (addressing equal protection); *see also* Doc. 18 at 3 (arguing in support of mandamus that "the underlying legal issue – whether Defendants are obligated to comply with a validly promulgated regulation – is identical"). Thus, the non-Rancho del Oso Pardo Plaintiffs argue they have been treated similarly to, not differently from, Rancho del Oso Pardo. Moreover, even if the non-Rancho del Oso Pardo Plaintiffs looked to Rancho del Oso Pardo as an example of disparate treatment, this one isolated example of different treatment is insufficient to state a class-of-one claim. *See Kansas Penn Gaming*, 656 F.3d at 1216-18 (holding that to prevail on a class-of-one theory, a plaintiff must show it was treated differently from *all others* similarly situated and that

this difficult standard prevents "turning even quotidian exercises of government discretion into constitutional causes").

Turning to Three Rivers Ranch, it claims that, because Defendants failed to respond to Fenn Farm's application, it didn't even bother to undergo the seemingly futile process of applying. *Fenn Farm*, Doc. 1-1 ¶ 28. In making this claim, Three Rivers Ranch fails to provide any facts as to action Director Sloane specifically took (or failed to take) regarding it. Because Three Rivers Ranch provided no application on which Director Sloane could or could not act, Director Sloane had no occasion to treat Three Rivers Ranch differently than anyone else. As a result, Three Rivers Ranch fails to state an equal protection claim. Further, even recognizing Three Rivers Ranch's claim that Director Sloane's act of not processing others' applications prevented it from applying, Three Rivers Ranch is merely asserting that it is receiving the same treatment as others similarly situated. Such an assertion fails to state a class-of-one equal protection claim.

Finally, regarding Rancho del Oso Pardo, Director Sloane recommended the Commission accept its application. *Rancho*, Doc. 1-1 ¶ 31. Rancho del Oso Pardo's claim, then, is with inaction on the part of the Commission, not with inaction on the part of Director Sloane. Rancho del Oso Pardo does not allege that any action or inaction on the part of Director Sloane caused it injury. Given that Director Sloane appears to have done everything Section 19.31.22 requires when it comes to Rancho del Oso Pardo, Rancho del Oso Pardo has failed to state a class-of-one equal protection claim against Director Sloane.

This analysis demonstrates that no individual Plaintiff states a class-of-one claim when that Plaintiff's claim is analyzed separately from its co-Plaintiffs. The Court reaches this same result when it treats Plaintiffs as one unit. Plaintiffs collectively merely state that "Defendants

have granted a number of Applications submitted by other similarly situated owners of private property along non-navigable rivers or streams." *Rancho*, Doc. 1-1 ¶ 45; *Fenn Farm*, Doc. 1-1 ¶ 41. This allegation is "merely a formulaic recitation of a legal conclusion," and is inadequate to show by "specific facts" that the other property owners are similar in all material aspects.[15] *Kansas Penn Gaming*, 656 F.3d at 1220; *see also Glover v. Mabrey*, 384 F. App'x 763, 778 (10th Cir. 2010) (unpublished) (granting a motion to dismiss on an equal protection class-of-one claim because the plaintiff "failed to allege, as it must, the identity or characteristics of other similarly situated contractors and how those similarly situated contractors were treated differently"). Further, as set forth above, Plaintiffs' Complaints indicate that Director Sloane's treatment of applicants can be divided into two general groups: those who applied before the NMAG communication Plaintiffs reference in their Complaints and those who applied after this NMAG communication. *Rancho*, Doc. 1-1 ¶¶ 22, 25, 27; *Fenn Farm*, Doc. 1-1 ¶¶ 24, 26. Except for Rancho del Oso Pardo, Plaintiffs do not allege that Director Sloane processed any applications after having received this NMAG communication. For these reasons, Plaintiffs have failed to state facts showing that they were intentionally treated differently from others similarly situated[16] and have therefore failed to meet their burden under prong one of qualified immunity,

---

[15] In response to the Motion to Dismiss, Plaintiffs discuss and cite other approved applications. *Rancho*, Doc. 20 at 12; *Fenn Farm*, Doc. 18 at 17. The Tenth Circuit has indicated that "it *might* be appropriate for a court to consider additional facts or legal theories asserted in a response brief to a motion to dismiss if they [a]re consistent with the facts and theories advanced in the complaint." *Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001) (emphasis added). Rather than culling facts from arguments made in the many briefs filed, the more efficient course here is to dismiss the claim without prejudice and permit Plaintiffs an opportunity to amend the complaint to squarely place before the Court all allegations on which they rely.

[16] When discussing the second criterion – the reason for the different treatment – the parties focus on documents outside the pleadings. For example, Director Sloane alleges his conduct was rational based on the advice received from the Attorney General's office questioning the validity of the regulation. *Rancho*, Doc. 8 at 20 n.11; *Rancho*, Doc. 24 at 13-14; *Fenn Farm*, Doc. 4 at

i.e., they have failed to allege facts showing a plausible claim that Director Sloane violated their right to equal protection.

Further, even if Plaintiffs had stated facts to create a plausible claim that Director Sloane violated Plaintiffs' rights under the Equal Protection Clause, Director Sloane is entitled to qualified immunity because Plaintiffs have not established that their constitutional right was clearly established when the alleged violation occurred. Plaintiffs acknowledge that "there are obviously no prior cases dealing specifically with whether the failure to uniformly apply the Rule to all applicants is a violation of a plaintiff's right to equal protection." *Rancho*, Doc. 20 at 15; *Fenn Farm*, Doc. 18 at 20. Instead, they cite the general rule from *Olech*, 528 U.S. 562, that state actors are prohibited from treating similarly situated persons differently. Although Plaintiffs need not find controlling precedent with an identical fact pattern, the similarity between the purported notice-providing case and the pending case must go beyond sharing the same cause of action. *See Kerns v. Bader*, 663 F.3d 1173, 1182-83 (10th Cir. 2011) ("[W]hen it comes to deciding the second qualified immunity question, it is not enough to look at, and declare a law enforcement officer liable, based on such generalized principles. . . The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.") (internal quotation marks omitted). In dealing with an allegation of constitutional deprivation based on the Fourth Amendment, for example, the question is not "whether we all have some general privacy interest

---

25; *Rancho*, Doc. 31 at 13-14. Plaintiffs counter that the Director was told by the Maestas Memo not to rely on the Grubesic Memo and was instead instructed to abide by the regulation. *Rancho*, Doc. 20 at 13, 16; *Fenn Farm*, Doc. 18 at 18-19; *see also Rancho*, Doc. 20-1 (Maestas Memo). As discussed above, on this Rule 12(b)(6) analysis, the Court reviews the allegations in the Complaints, not outside material. Further, the Court need not address criterion two because Plaintiffs have failed to meet criterion one.

in our homes (of course we do)," it is instead whether "exigent circumstances existed (based on a belief that someone who had just shot down a police helicopter might be hiding in or near the home)" and whether the "intrusion was justified in part because of the consent the plaintiff supplied (at least after the incursion was first made)." *Id.* at 1183.

Applying this logic here, Plaintiffs cannot prevail by pointing to a highly generalized holding on equal protection. This case involves allegations that a public official violated a plaintiff's equal protection rights by not taking action a public regulation requires, even though that public official did follow the regulation as applied to others. Although the Court does not now hypothesize about what facts from controlling authority might be sufficient to place Director Sloane on notice, at a minimum the controlling authority would have to involve a public official not following a duly enacted law or regulation. If Plaintiffs cannot find prior cases on point, or cases that render the constitutional question "beyond debate," they cannot prevail against the defense of qualified immunity. *Quinn v. Young*, 780 F.3d 998, 1013 (10th Cir. 2015) (it is well settled in the Tenth Circuit that "the *plaintiff* bears the burden of citing to us what he thinks constitutes clearly established law" (internal quotation marks and alteration omitted)).

For these reasons, the Court finds that Plaintiffs have failed to state a plausible class-of-one equal protection claim against Director Sloane and that qualified immunity shields him from Plaintiffs' class-of-one equal protection claim.

### 4. Leave to Amend

Plaintiffs argue that if the Court should find their allegations lacking, they should be given leave to amend because they filed their Complaints in state court which has a much lower pleading standard. *Rancho*, Doc. 20 at 2-3; *Fenn Farm*, Doc. 18 at 7-8. The Department and Director Sloane, on the other hand, argue that the claims should be dismissed with prejudice

because amending the Complaints would be futile. *Rancho*, Doc. 24 at 17; *Rancho*, Doc. 31 at 17. The Court agrees with Plaintiffs.

Echoing the language of the Federal Rules, New Mexico's Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." NMRA 1-008(A)(2). New Mexico, however, has declined to follow the United States Supreme Court's interpretation of Federal Rule 8, as articulated in *Iqbal*, 556 U.S. 662, and *Twombly*, 550 U.S. 544. Instead, New Mexico has criticized it: "The plausibility standard created by the two U.S. Supreme Court cases adds a determination of likelihood of success on the merits so that a trial judge can dismiss a claim, even where the law does provide a remedy, if that judge does not believe it is plausible the claim will succeed." *Madrid v. Vill. of Chama*, 2012-NMCA-071, ¶ 17, 283 P.3d 871, 876. Thus, a party filing in New Mexico state district court should not expect to have to comply with the federal standard.

Federal Rule of Civil Procedure 15 permits a plaintiff to amend a complaint as of right only within 21 days after serving it or 21 days after service of a Rule 12(b) motion. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). But "[t]he court should freely give leave when justice so requires." *Id.* The Court agrees that, due to the difference between the standards articulated by New Mexico and the U.S. Supreme Court, a plaintiff whose suit is removed from state court to federal court should generally be permitted to amend the complaint if it is determined not to comply with *Twombly* and *Iqbal*.

Accordingly, the Court will allow Plaintiffs 45 days to amend their Complaints. Because of the differing pleading standards in federal and state court, the Court will allow Plaintiffs to

amend all aspects of their Complaints, including, if they choose, any amendments to the
mandamus and declaratory judgment claims.

### 5. **Section 1983 Claims Against the Department**

Although not entitled to qualified immunity, the Department alleges that Plaintiffs have
failed to state claims against it for a violation of substantive due process or equal protection.
Specifically, the Department alleges that the Complaints fail to allege any specific actions taken
by the Department that deprived Plaintiffs of their constitutional rights. *Rancho*, Doc. 8 at 14;
*Fenn Farm*, Doc. 4 at 14. Indeed, to state a claim under Section 1983, a plaintiff must "make
clear exactly *who* is alleged to have done *what* to *whom*." *Pahls v. Thomas*, 718 F.3d 1210, 1225
(10th Cir 2013) (emphasis in original) (internal quotation marks omitted). That is, when a
plaintiff sues multiple defendants, merely stating that the plaintiff's "rights were violated" or that
the "defendants infringed" plaintiff's rights will not suffice. *Id.* at 1225-26 (internal quotation
marks omitted); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) ("[I]t is
particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what*
to *whom*, to provide each individual with fair notice as to the basis of the claims against him or
her, as distinguished from collective allegations against the state." (emphasis in original)).

The Court agrees with the Department that, when Plaintiffs refer to the Department in
their Complaints, the Section 1983 allegations against the Department are too general. For
instance, Plaintiffs allege that "[t]he Department, the Director, the Game Commission, and the
Commissioners (acting in their individual and official capacities) have willfully, deliberately,
intentionally and knowingly failed and refused to consider Plaintiffs' applications, thereby
depriving Plaintiffs of the property rights and protections provided by Rule 19.31.22 [NMAC]."
*Rancho*, Doc. 1-1 ¶ 36; *Fenn Farm*, Doc. 1-1 ¶ 33 (referring generally to "Defendants"). Such a

conclusory and collective allegation does not make clear what improper act the Department is alleged to have done.

However, it is not only Plaintiffs' references to the Department that matter. Plaintiffs sued Director Sloane in both his individual and official capacity. And, "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 690 n.55 (1978). As a result, to determine what allegations Plaintiffs make against the Department, the Court must also consider what allegations Plaintiffs make against the Director.

In the Complaints, Plaintiffs make many allegations about actions Director Sloane took and do not specify whether Director Sloane took those actions in his official capacity. *See Rancho*, Doc. 1-1 ¶¶ 25-28, 31; *Fenn Farm*, Doc. 1-1 ¶ 26. Nonetheless, viewing the allegations in the light most favorable to Plaintiffs, the Court reads Plaintiffs' Complaints as alleging that Director Sloane was acting in his official capacity when he allegedly deprived Plaintiffs of their rights to substantive due process and equal protection.

This does not mean that Plaintiffs have stated a Section 1983 claim against the Department, however. Under *Monell*, local governing bodies face Section 1983 liability where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. at 690-91; *see also Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993) ("[T]o establish municipal liability, a plaintiff must show 1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged."). Further, "[a] plaintiff suing a municipality under Section 1983 for the acts of one of its employees must prove: (1) that a municipal employee committed a constitutional violation,

and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Oklahoma Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998). It appears that Plaintiffs' Complaints fail to allege that the Department had a policy or custom which deprived Plaintiffs of their constitutional rights. Further, since the Court finds that Plaintiffs fail to state a claim that Director Sloane committed any constitutional violation, it appears to follow that the Department is not liable under Section 1983.

The Court, however, will not grant a motion to dismiss for reasons that have not been briefed. In its briefs, the Department did not argue for dismissal of the Section 1983 claims against it because Plaintiffs failed to allege a policy or custom or because Plaintiffs fail to state a claim against Director Sloane. As a result, the Court will deny the Motions to Dismiss as to the Department. After Plaintiffs file an amended complaint(s) or after the time to do so expires, the Court will hold a status conference at which time it will discuss what issues remain outstanding and which of those the parties wish to brief.

### 6. Mandamus/ Declaratory Judgment Claims

Plaintiffs seek a writ of mandamus "compelling Defendants to comply with their statutory and regulatory obligations" under Section 19.31.22. *Rancho*, Doc. 1-1 ¶ 55; *Fenn Farm*, Doc. 1-1 ¶ 52. In the alternative, Plaintiffs seeks a declaratory judgment "declaring that Plaintiffs have satisfied all requirements of Section 19.31.22 and compelling the Commission to issue a certificate to Plaintiffs pursuant to Section 19.31.22." *Rancho*, Doc. 1-1 ¶ 57; *Fenn Farm*, Doc. 1-1 ¶ 54. The Department and Director Sloane argue that the Court should also dismiss Plaintiffs' claims for mandamus and declaratory judgment because they have performed all clear legal duties and neither is authorized to approve Plaintiffs' applications. *Rancho*, Doc. 8 at 9; *Fenn Farm*, Doc. 4 at 8.

35

The present Order grants Plaintiffs' request to amend their Complaints. Because amendments Plaintiffs may choose to make could alter the mandamus and declaratory judgment claims, the Court chooses not to decide those claims at this time. Instead, the Court will hold a status conference after Plaintiffs' deadline to amend their Complaints expires. At the status conference, the Court will discuss whether any amendments Plaintiffs might make alter the complexion of mandamus and declaratory judgment claims to a degree that either new or supplemental briefing is required.

Similarly, because Plaintiffs may amend their Complaints in a way that affects the analysis of their mandamus claims, the Court will continue to take under advisement its decision on Plaintiffs' Motion for Partial Summary Judgment Against the New Mexico Game Commission.[17] *Rancho*, Doc. 37. After Plaintiffs' deadline to file their amended complaint(s) expires, the Court will hold a status conference to discuss whether new or supplemental briefing is required.

### 7. Motion to Consider New Evidence

After the parties finished briefing the Motions to Stay and Motions to Dismiss, Plaintiffs filed an Opposed Motion for Consideration of Newly Discovered Evidence Relevant to Pending Motions. *Rancho*, Doc. 46. In that motion, Plaintiffs draw attention to the Grubesic Memorandum. The Grubesic Memorandum is an opinion from the Attorney General's office to the Game Commission, dated September 17, 2019, which concludes that the New Mexico "Constitution precludes use of the Regulation by the Commission as a means to exclude the

---

[17] Plaintiffs request partial summary judgment against the Commission on their mandamus claim, arguing that the Commission had a mandatory and non-ministerial obligation to issue a final agency decision on Plaintiffs' application and that there is no factual dispute that the Commission failed to comply with this obligation. *Rancho*, Doc. 37.

public from using public water within private property for recreational purposes if the stream is reached without trespassing on private property." *See Rancho*, Doc. 10 at 25 ¶ 15. Plaintiffs assert that in response to their IPRA request they received an email chain that "reveals that Director Michael Sloane was advised on September 17, 2019 that the Grubesic Memorandum – a document which Director Sloane contends materially impacted his decision – was nothing more than a draft for discussion purposes only." *Rancho*, Doc. 46 at 2. They further allege that Defendants "concealed the status of this document from the Court, contending that the document was official guidance from the New Mexico Office of the Attorney General." *Id.* Plaintiffs argue that this email chain affects the pending motions and, therefore, the Court should consider it.[18]

As the Court noted above, the Plaintiffs do not incorporate allegations related to any memorandum from the Attorney General's office, draft or otherwise, into their Complaints.[19] As a result, arguments related to Attorney General memoranda have no bearing on resolution of the pending Motions to Dismiss. Thus, to the extent Plaintiffs' Motion to Consider New Evidence relates to the pending Motions to Dismiss, the Court denies the motion.

Plaintiffs also assert that their Motion to Consider New Evidence bears "directly on the relief being sought by Plaintiffs in their Motion for Summary Judgment." *Rancho*, Doc. 46 at 2.

---

[18] Plaintiffs make two other allegations in their Motion: that Defendants concealed the existence of the email chain by refusing to produce it in response to an IPRA request and that "someone" submitted falsified evidence to the New Mexico Supreme Court. *Rancho*, Doc. 46 at 2. However, Plaintiffs seek no relief relevant to these allegations and so the Court will not address them.

[19] The Court does consider allegations in Plaintiffs' Complaints that, according to Director Sloane, advice from the NMAG caused him to decline to recommend applications for approval or disapproval. In doing so, however, the Court simply considers the NMAG advice as a marker that divides applications received before this purported advice from applications received after this purported advice for purpose of its class-of-one equal protection analysis. The Court does not presently consider the content of any Memorandum or whether Director Sloane justifiably relied on any Memorandum.

However, Plaintiffs make no further arguments regarding the Motion for Summary Judgment

and instead focus their argument on how the Grubesic Memo impacts the Motions to Dismiss

and the Motions to Stay. Because Plaintiffs' Motion to Consider New Evidence focuses on the

Motions to Dismiss and the Motions to Stay and because in deciding these motions the Court

declined to consider allegations not contained in the Complaints, the Court denies Plaintiffs'

Motion to Consider New Evidence. During the next status conference in this matter, the Court

will discuss whether Plaintiffs should be allowed to renew this motion as it relates to their

Motion for Summary Judgment.

## **<u>CONCLUSION</u>**

The Court DENIES (1) the Commission and Commissioner's Motion to Stay filed in the

*Rancho* case (Doc. 6); (2) the Department and Director Sloane's Motion to Stay filed in the

*Rancho* case (Doc. 9); and (3) the Department and Director Sloane's Motion to Stay filed in the

*Fenn Farm* case (Doc. 5).

The Court further GRANTS IN PART and DENIES IN PART (1) Defendants New

Mexico Department of Game and Fish and Director Michael Sloane's Motion to Dismiss

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure in the *Rancho* case (Doc. 7);

and (2) Defendants New Mexico Department of Game and Fish and Director Michael Sloane's

Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed in the

*Fenn Farm* case (Doc. 3) as follows:

- the Motions are granted as to the substantive due process and equal protection claims
  against Director Michael Sloane;

- the Motions are denied as to the substantive due process and equal protection claims
  against the New Mexico Department of Game and Fish;

- Plaintiffs will have forty-five days from the entry of this Order to amend their Complaints.

The Court TAKES UNDER ADVISEMENT:

- the portions of Defendants' Motions to Dismiss related to the mandamus and declaratory judgment claims;

- Plaintiffs' Motion for Partial Summary Judgment Against the New Mexico Game Commission filed in the *Rancho* case (Doc. 37).

Lastly, the Court DENIES Plaintiffs' Motion for Consideration of Newly Discovered Evidence Relevant to Pending Motions filed in the *Rancho* case (Doc. 46).


_____
UNITED STATES MAGISTRATE JUDGE
Presiding by consent