## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

RANCHO DEL OSO PARDO, INC.;
RIVER BEND RANCH, LLC; and
CHAMA III, LLC d/b/a CANONES
CREEK RANCH,

and

FENN FARM; and THREE RIVERS
CATTLE LTD, CO.,

   Plaintiffs,           CIV 20-427 SCY/KK
                   (as consolidated with
vs.                 CIV 20-468 SCY/KK)

NEW MEXICO GAME COMMISSION; SHARON
SALAZAR HICKEY, chair of the New Mexico
Game Commission, in her individual and official
capacity; ROBERTA SALAZAR-HENRY,
vice-chair of the New Mexico Game Commission,
in her individual and official capacity; JIMMY
BATES, member of the New Mexico Game
Commission, in his individual and official capacity;
GAIL CRAMER, member of the New Mexico Game
Commission, in her individual and official capacity;
TIRZIO LOPEZ, member of the New Mexico Game
Commission, in his individual and official capacity;
 and JEREMY VESBACH, member of the New
Mexico Game Commission, in his individual and
official capacity,

   Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING IN PART MOTION TO DISMISS

   This matter comes before the Court on consolidated cases[1] that seek enforcement of New

Mexico Administrative Code ("NMAC") Section 19.31.22 and allege Constitutional violations

---

[1] The consolidated cases in this matter are *Rancho Del Oso Pardo, Inc. v. N.M. Dep't of Game
and Fish*, No. 20-cv-427 (D.N.M. filed May 5, 2020) ("*Rancho*"), and *Fenn Farm v. N.M. Dep't*

related to applications under Section 19.31.22. Section 19.31.22 provides a process by which property owners whose property abuts waterways can seek a certification and signage that the waterway is non-navigable and closed to the public. Plaintiffs are companies and LLCs that own ranches along rivers and who submitted applications for certification pursuant to Section 19.31.22 that the New Mexico Game Commission denied. Plaintiffs bring suit against the New Mexico Game Commission ("the Commission") and its individual members ("the Commissioners").[2] Plaintiffs' amended complaint brings six counts: (1) declaratory judgment compelling the Commission to issue certificates under Section 19.31.22; (2) denial of substantive due process under Section 1983; (3) denial of equal protection under Section 1983; (4) civil conspiracy under Section 1983; (5) violations of due process and equal prosecution under the New Mexico Constitution; and (6) violations of the Open Meetings Act. Doc. 72.

Presently before the Court is the individual Commissioners' Motion to Dismiss Claims for Denial of Constitutional Rights.[3] Doc. 74; *see also* Docs. 76 (response), 78 (reply). Having reviewed the briefing and all relevant law, the Court grants the motion to dismiss in part, finding that the Commissioners, in their individual capacities, are entitled to qualified immunity on Plaintiffs' federal substantive due process, equal protection, and civil conspiracy claims.

---

*of Game and Fish*, No. 20-cv-468 (D.N.M. filed May 14, 2020) ("*Fenn Farm*"). *Rancho* is the lead case.

[2] Plaintiffs sue the Commissioners in their official and individual capacities. "Since official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent," *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978), the Court uses the term "Commission" when addressing the official capacity claims and "Commissioners" when addressing the individual capacity claims.

[3] Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), all parties in both consolidated cases consented to me serving as the presiding judge and entering final judgment in these cases. *See Rancho*, Docs. 14, 15, 16; *Fenn Farm*, Docs. 24, 25, 26, 27, 28, 29.

Qualified immunity, however, does not apply to Plaintiffs' state constitutional claims and so the Court denies the motion to dismiss in part. The Court also declines to consider arguments regarding the other claims to which qualified immunity does not apply—declaratory judgment and violations of the Open Meetings Act.

## **BACKGROUND**

The consolidated cases presently before the Court are related to a case before the New Mexico Supreme Court that also concerns Section 19.31.22. In *Adobe Whitewater Club of New Mexico v. Honorable Michelle Lujan Grisham*, No. S-1-SC-38195 (N.M. filed Mar. 13, 2020) ("*Adobe Whitewater*"), the Adobe Whitewater Club of New Mexico, the New Mexico Wildlife Federation, and the New Mexico Chapter of Backcountry Hunters & Anglers filed a Petition for Mandamus in the New Mexico Supreme Court seeking a decision on whether Section 19.31.22 is constitutional under the New Mexico Constitution.

On March 2, 2022, the New Mexico Supreme Court heard oral arguments and granted the petition for mandamus, finding that Section 19.31.22 violates the New Mexico Constitution. Order, *Adobe Whitewater* (Mar. 2, 2022). The court held that "certificates that the New Mexico State Game Commission has issued to private landowners pursuant to 19.31.22 NMAC are hereby declared VOID," and that the Commission is prohibited from further implementation of the Section 19.31.22. *Id.*; *see also* Writ of Mandamus, *Adobe Whitewater* (Mar. 2, 2022). The Intervenor-Respondents[4] filed a motion for rehearing, which the court denied. Intervenors-Respondents' Motion for Rehearing, *Adobe Whitewater* (Mar. 17, 2022); Order, *Adobe Whitewater* (May 31, 2022). On September 1, 2022, the New Mexico Supreme Court issued its

---

[4]The Intervenor-Respondents in the Supreme Court case include the Plaintiffs in the case. *See* Order on Motion to Intervene, *Adobe Whitewater* (June 22, 2020).

final written decision, explaining it reasoning and rationale, and concluding that "the Regulations are an unconstitutional infringement on the public's right to use public water and that the Commission lacked the legislative authority to promulgate the Regulations." *Adobe Whitewater Club of New Mexico v. New Mexico State Game Comm'n*, __ P.3d ___, 2022 WL 3972745, at *10 (N.M. 2022).

Turning to the case at hand, the Court provides a factual and procedural background.

## 1. Factual Background

Because this matter is before the Court on a motion to dismiss, the Court accepts the following facts Plaintiffs set forth in their amended complaint (Doc. 72) as true.

### a. Stream Access Law and Section 19.31.22

The New Mexico Legislature enacted the Stream Access Law (NMSA § 17-4-6(C)) on July 1, 2015, which provides in part that

> No person engaged in hunting, fishing, trapping, camping, hiking, sightseeing, the operation of watercraft or any other recreational use shall walk or wade onto private property through non-navigable public water or access public water via private property unless the private property owner or lessee or person in control of the private land has expressly consented in writing.

Doc. 72 ¶ 14. The New Mexico Game Commission issued Section 19.31.22, which establishes a process for landowners to submit applications for certification of non-navigable streams and rivers. *Id.* ¶ 15.

Under Section 19.31.22.8, a landowner's application must include: (1) the landowner's name, address, telephone number, name of property, and a contact person who could grant permission to access the property; (2) a current recorded property deed and map to identify potential access points to water and access roads; (3) proof of publication of notice of application for certification; and (4) substantial evidence of the water being non-navigable at the time of

4

New Mexico's statehood, on a segment-by-segment basis. *Id.* ¶ 16. If an application includes all the required information, then it "shall be accepted for further consideration . . . without regard to the merits of the application." *Id.* ¶ 17 (quoting 19.31.22.8(C) NMAC).

After the application is accepted, it "shall be forwarded by the department to the director so that a determination can be made by the director whether the application meets the requirements set forth in 19.31.22.8 NMAC." *Id.* ¶ 18 (quoting 19.31.22.9(B) NMAC). If the Director determines that the application meets the requirements of Section 19.31.22.8, the Director "shall issue a written determination and recommendation to the commission that the segment in the application shall be designated a 'non-navigable public water' . . . and the matter shall be heard at a future regular meeting or special meeting" of the Commission. *Id.* ¶ 19 (quoting 19.31.22.9(B)(1) NMAC). On the other hand, if the Director determines that the application does not meet the requirements of Section 19.31.22.8, the Director "shall issue a written rejection of the application  . . . and the matter shall be heard at a future regular meeting or special meeting" of the Commission. *Id.* ¶ 19 (quoting 19.31.22.9(B)(2) NMAC). Within 60 days of the meeting described in Section 19.31.22.9(B), "the commission shall issue its written final agency action and decision with the factual and legal basis for that decision." *Id.* ¶ 20 (quoting 19.31.22.11(H) NMAC). If the Commission finds that an application should be granted, then "a certificate shall be issued by the director immediately following the issuance of the written final agency action and decision indicating the segment . . . is now a 'certified non-navigable public water.'" *Id.* ¶ 20 (quoting 19.31.22.13(A) NMAC).

b.  Prior Applications

The Commissioner has certified a number of non-navigable segments of rivers and streams based on applications by property owners: (1) Z&T Cattle Company's July 24, 2018

application regarding a segment of the Mimbres River; (2) Z&T Cattle Company's July 24, 2018

application regarding a segment of the Penasco River; (3) Z&T Cattle Company's July 24, 2018

application regarding a segment of the Mamosa River: (4) the Kenneth A. Hersh Qualified

Residence Trust and the Julie K. Hersh Qualified Residence Trust's July 24, 2018 application

regarding a segment of the Pecos River; and (5) Chama Troutstalker, LLC's July 24, 2017

application regarding segments of the Chama River and Rio Chamita (collectively the "2018

applications"). *Id.* ¶¶ 21-22. Each of the 2018 applications provided: (1) the landowner's name,

address, telephone number, name of property, and a contact person who could grant permission

to access the property; (2) a current recorded property deed and map to identify potential access

points to water and access roads; (3) proof of publication of notice of application for

certification; and (4) substantial evidence of the water being non-navigable at the time of New

Mexico's statehood, on a segment-by-segment basis. *Id.* ¶ 23. Each of the 2018 applications also

included information regarding navigability of the water segment. *Id.* ¶ 24. This is the same

information included in all of Plaintiffs' applications. *Id.* ¶ 23.

The Commission entered final orders on these applications on December 28, 2018

(collectively, the "2018 orders"). *Id.* ¶ 25. In the 2018 orders, the Commission approved the

applications, finding all the requirements met, including finding substantial evidence of the water

being non-navigable at the time of New Mexico's statehood. *Id.* ¶¶ 30-31.

c.   Plaintiffs' Applications

Plaintiffs Rancho Del Oso Pardo, Inc. ("RDOP"), River Bend Ranch, LLC ("River

Bend"), Chama III LLC d/b/a Canones Creek Ranch ("Canones"), Fenn Farm, and Three Rivers

Cattle Ltd Co. ("Three River Ranch") all own land alongside rivers and creeks. Doc. 72 ¶¶ 1-5.

Plaintiffs derive beneficial and economic use of their property by the ability of the owners,

6

guests, and shareholders of the companies to enjoy the private river-front properties without interference by non-owners. *Id.* ¶ 6. Indeed, Plaintiffs obtained and developed such properties for the purpose of enjoying such private river-front property. *Id.*

On September 17, 2019, River Bend Ranch submitted to the New Mexico Department of Game and Fish ("the Department") an application under Rule 19.31.22 regarding a segment of the Pecos River. *Id.* ¶ 32. The application complied with all requirements of Section 19.31.22. *Id.* ¶ 33. On November 25, 2019, Director of the New Mexico Department of Game and Fish, Michael Sloane, issued a letter to the Commissioner with his formal recommendation of River Bend Ranch's application, stating that "[w]hile the application provides similar information to applications approved by the previous Commission, given recent advice by the Office of the Attorney General regarding 19.31.22 NMAC and recent Commission direction, I cannot recommend approval of the applications." *Id.* ¶ 34.

Canones also submitted to the Department, on September 27, 2019, an application for certification regarding segments of the Chama River and Rio Chamita; this application also complied with all requirements of Section 19.31.22. *Id.* ¶¶ 36-37. As with River Bend Ranch's application, the Director issued a letter to the Commission on November 25, 2019 stating that "[w]hile the application provides similar information to applications approved by the previous Commission, given recent advice by the Office of the Attorney General regarding 19.31.22 NMAC and recent Commission direction, I cannot recommend approval of the applications." *Id.* ¶ 38. This "recent advice" refers to a draft memorandum Assistant Attorney General John Grubesic submitted to the Commission (the "Grubesic memo"). *Id.* ¶ 39.

On December 16, 2019, in response to the Director's failure to recommend approval of the applications to the Commission, Tania Maestas, Chief Deputy of the Office of Attorney

General, sent a letter to Director Sloane and the Commission, including Commissioners Salazar-Henry, Bates, Cramer, Lopez, and Vesbach, advising them that they must comply with Section 19.31.22 and that they must treat Plaintiffs in the same manner as they treated other applicants (i.e., issue a recommendation, hold a required meeting, and issue certificates). *Id.* ¶ 41. In that letter, Chief Deputy Attorney General Maestas advised the Commission and the Commissioners that the Grubesic memo "does not constitute a formal Attorney General opinion, and notably does not have the force of law." *Id.* ¶ 42. She further advised that "[t]o rely solely upon [the Grubesic memo] as a basis for denying an application to what until now has been a properly promulgated rule, is tenuous, at best," that denying the applications based on the Grubesic memo "raises serious due process and equal protection concerns," and that "there is nothing within [the Grubesic memo] that advises such rash action." *Id.* ¶¶ 42-43. She therefore advised the Commission and the Commissioners that "[a]bsent a determination that the rule is in fact unconstitutional, and absent a proper procedure, the Commission's actions may be deemed arbitrary or capricious, which even further increases the risk of litigation." *Id.* ¶ 44. She explained that "[b]ecause all New Mexicans deserve certainty in the administrative process to ensure fairness and equal protection of the law, we reiterate that disparate treatment of applicants under the rule, without a judicial determination or a proper remedial course, exposes the Commission and the State to untenable litigation risk. According, we respectfully advise you to enforce the rule in a consistent manner or to consider any other steps that would eliminate the risk." *Id.* ¶ 45.

RDOP submitted its application under Section 19.31.22, regarding a segment of the Chama River, to the Director on November 20, 2019. *Id.* ¶ 47. That application met all the requirements of Section 19.31.22. *Id.* ¶ 48. On January 19, 2020, the Director issued his formal

recommendation to the Commission, stating that "the application, as submitted, provides the information required by the Landowner Certification of Non-navigable Water Rule 19.31.22 NMAC," and that he has "determined and recommend[s], pursuant to the current rule and the application, that the Rancho del Oso Pardo, Inc., segment of the Chama River be designated a non-navigable public water." *Id.* ¶ 49.

On March 9, 2020, the Commission placed a banner on the "Landowner Certification of Non-Navigable Water Segment" section of its webpage stating that, "The Department is not currently considering any new application under this program. (Effective 04-09-2020)." *Id.* ¶¶ 50, 130. The Commission and one or more of the Commissioners approved, authorized, or ratified this banner, without any public notice or hearing. *Id.* ¶¶ 50-51. Eventually, sometime between May 2021 and October 15, 2021, the Commission entirely removed from its website the page explaining how to submit applications and providing information on completed and pending applications. *Id.* ¶ 131.

Fenn Farm attempted to hand-deliver an application under Section 19.31.22 to the Commission on March 13, 2020, regarding segments of the Rio Hondo and Berrendo Rivers. *Id.* ¶ 52. The application complied with all requirements of Rule 19.31.22. *Id.* ¶ 53. The Commission and/or the Department refused to accept Fenn Farm's application without providing any basis for the refusal. *Id.* ¶ 53. That same day, Fenn Farm emailed its application to Director Sloane. *Id.* ¶ 54. On May 12, 2020, Director Sloane sent a letter to the Commission stating that he had "determined and recommend[s], pursuant to current rule and the application, that the Fenn Farm[] Ranch segment of the Rio Hondo and Berrendo River be designated a non-navigable public water." *Id.* ¶ 55.

Lastly, similar to Fenn Farm, Three Rivers Ranch submitted a March 13, 2020 application to the Commission regarding segments of Three Rivers and Indian Creek that complied with all requirements of Section 19.31.22. *Id.* ¶ 56. On November 17, 2020, Director Sloane sent a letter to the Commission stating that he had "determined and recommend[s], pursuant to current rule and application, that the Three Rivers Ranch segment of Three Rivers and Berrendo River be designated a non-navigable public water." *Id.* ¶ 57.

Each of Plaintiffs' applications included all information required by Section 19.31.22.8, including substantial evidence of the water being non-navigable at the time of New Mexico's statehood. *Id.* ¶¶ 59-60. All applications included the same information as the 2018 applications. *Id.* ¶ 59, 61.

    d.  <u>The Commission's Action on Plaintiffs' Applications</u>

Under Section 19.31.22, the Commission is required to issue final agency decisions on applications within 180 days of the Director's recommendation. *Id.* ¶ 63. As such, the deadline for final agency decisions on Plaintiffs' applications were: (1) May 23, 2020 for Canones; (2) May 23, 2020 for River Bend; (3) July 17, 2020 for RDOP; (4) November 8, 2020 for Fenn Farm; and (5) May 16, 2021 for Three Rivers Ranch. *Id.* The Commission and the Commissioners did not issue timely final decisions on any of the Plaintiffs' applications. *Id.* ¶¶ 64-66, 81.

Plaintiffs RDOP, Canones, and River Bend filed a motion for summary judgment in this lawsuit on August 7, 2020, seeking a writ of mandamus against the Commission requiring it to issue a final agency decision. *Id.* ¶ 71. Plaintiffs Fenn Farm and Three Rivers Ranch did not join that motion because, at that time, the Commission's time to issue a final agency decisions on their applications had not yet expired. *Id.* ¶ 72. The Court granted that motion on March 9, 2021,

and ordered the Commission to hold a meeting, following the rules in Section 19.31.22, and issue final agency decisions on Plaintiffs' applications. *Id.* ¶¶ 73-74.

Following that Order, the Commission and Commissioners agreed to hold hearings on the applications of RDOP, Canones, and River Bend but initially refused to hold hearings on Fenn Farm's and Three Rivers' applications since they were not the subject of the Court's order. *Id.* ¶ 78. Upon written demand by Plaintiffs, the Commission agreed to add Fenn Farm and Three Rivers Ranch's applications to a future hearing. *Id.* ¶ 80.

On August 12, 2021, the Commission held a public hearing on the applications of all five Plaintiffs. *Id.* ¶ 82. Commissioners Hickey, Salazar-Henry, Bates, Lopez, and Vesbach all attended and participated in the hearing. *Id.* ¶ 82. Under Section 19.31.22.13, the Commission's role at and after the hearing was to determine whether a "segment be designated a non-navigable public water." *Id.* ¶ 83. The Commission must consider the "substantial evidence" submitted by applicants "which is probative of the waters, watercourse or river's being non-navigable at the time of statehood, on a segment-by-segment basis. This may include any reports to the US department of interior from the territorial governor(s) of New Mexico, any pre-statehood cases discussing the navigability or non-navigability of New Mexico's watercourses or rivers, any title opinion or other expert opinion, and any other evidence that may be probative." *Id.* ¶¶ 84, 86-87. Additionally, the chairperson of the Commission is allowed to "admit any evidence, in his or her sole discretion, which is probative of the issues." *Id.* ¶ 85 (quoting 19.31.22.11(F) NMAC).

At the hearing, Commissioner Salazar-Henry cited the Grubesic memo and stated that she believed a decision should be deferred on navigability issues until the New Mexico Supreme Court decided the *Adobe Whitewater* case. *Id.* ¶¶ 89-90. Commissioner Lopez stated his disapproval for the applications because the New Mexico Constitution provides that the

11

unappropriated waters of New Mexico belong to the public; Commissioner Lopez, however, failed to make a distinction between the water and ownership of the land below the waters. *Id.* ¶ 92. Commissioner Vesbach noted harm from prior certificate holders constructing barriers and stated that he believed issuing certificates would violate the constitutional rights of the public. *Id.* ¶ 93. Commissioner Bates declined to challenge the statement of other Commissioners. *Id.* ¶ 91. Commissioner Vesbach made a motion at the hearing, which was approved by all Commissioners, to accept the Director's recommendation regarding applications from Canones and River Ben Ranch—i.e., not to approve the applications given recent Attorney General guidance (the Grubesic memo). *Id.* ¶¶ 94-95.

Ultimately, Commissioners Salazar-Henry, Lopez, and Vesbach voted to reject all of Plaintiffs' applications. *Id.* ¶ 101. Commissioner Bates voted to reject some of Plaintiffs' applications and, due to a technical issue, did not participate in all of the votes. *Id.* ¶¶ 91, 102. Commissioner Hickey abstained from voting. *Id.* ¶ 103. An abstention was deemed an agreement with the majority, however, and she waited until all other Commissioners voted, so her abstention was the same as voting with the majority. *Id.* The Commission issued final agency decisions on the applications on September 2, 2021, which are allegedly based on the Commissioners' improper consideration of factors not allowed by the Rule. *Id.* ¶¶ 104, 108, 128-29; *see also id.* ¶ 106.

At the time of the hearing and final decision, the Commission and the Commissioners were aware of the 2018 applications and their similarities to Plaintiffs' applications. *Id.* ¶¶ 114-115, 118, 121-22, 124. There had been no change in the law or evidence between 2018 and 2021 regarding navigability. *Id.* ¶¶ 117, 119-120, 123, 125. Additionally, the Commission forced Plaintiffs to file the present litigation in order to receive a hearing and final decision at all. *Id.* ¶

127. According to Plaintiffs, by forcing applicants to initiate litigation, removing reference to the application process from the website, and unlawfully denying applications for reasons not stated in the Rule, the Commission has effectively withdrawn the Rule, without engaging in the rulemaking required to withdraw the Rule. *Id.* ¶¶ 132, 136; *see also id.* ¶¶ 133-35 (rulemaking steps required to withdraw a rule).

Plaintiffs also claim that, by failing to approve Plaintiffs' fully-compliant applications, the Commission and Commissioners have subjected Plaintiffs' property rights to trespass or threatened trespass, including making statements that suggest, and have been construed to mean, that it is permissible for members of the public to walk or wade in streambeds owned by Plaintiffs. *Id.* ¶¶ 139-44, 147-48. This has diminished the value of Plaintiffs' property. *Id.* ¶¶ 158-59.

### 2.  Procedural Background

Plaintiffs RDOP, River Bend, and Canones initiated the present lawsuit in state district court on April 14, 2020, against the Department, Director Sloane, the Commission, and the Commissioners. *Rancho*, Doc. 1-1. The lawsuit came to federal court when the Department and Director Sloane removed it from state court on May 5, 2020. *Rancho*, Doc. 1. In their original complaint, Plaintiffs sought a writ of mandamus, or in the alternative declaratory judgment, in the form of an order compelling Defendants to comply with Section 19.31.22. *Id.* They also brought three claims for damages under Section 1983: denial of substantive due process, denial of equal protection, and civil conspiracy. *Id.*

The second of the lawsuits now before the Court took life on May 8, 2020, when Plaintiffs Fenn Farm and Three Rivers Ranch filed suit in state district court against the same sets of Defendants. *Fenn Farm*, Doc. 1-1. Once again, the Department and Director Sloane

removed to federal court (on May 14, 2020). *Fenn Farm*, Doc. 1. The *Fenn Farm* Plaintiffs seek

the same relief as the *Rancho* Plaintiffs. *Fenn Farm*, Doc. 1-1. Thus, the Court has consolidated

the cases. *Fenn Farm*, Doc. 20.

Thereafter, upon motions from the Department and Director Sloane, the Court found that

Director Sloane is entitled to qualified immunity on Plaintiffs' claims for substantive due process

and equal protection, but allowed Plaintiffs an opportunity to amend their complaint. Doc. 50.

Instead of amending those claims, Plaintiffs dismissed the Department and Director Sloane from

the case, leaving the Commission and the Commissioners as the remaining Defendants. Doc. 54.

Next, of significance, Plaintiffs RDOP, River Bend, and Canones filed a motion for

partial summary judgment against the Commission on their mandamus claim. Doc. 37. The

Court granted this motion, requiring the Commission to hold a meeting on the three Plaintiffs'

applications and issue a final agency decision as required under Section 19.31.22. Doc. 58. The

Court took no position on whether the Commission should approve the applications or not, but

only required that the Commission issue a final agency decisions on the applications. *Id.* at 13-

14. Upon request from the parties, the Court then stayed the case pending final agency decisions

from the Commission. Docs. 61, 62. On September 3, 2021, Defendants notified the Court that

the Commission issued final agency decisions, denying each of Plaintiffs' applications.[5] Doc. 66.

Plaintiffs responded to the final agency decisions in two ways: first, they administratively

appealed the decisions to the state court. Second, they filed an amended complaint against only

Defendants Commission and Commissioners, alleging six counts: (1) declaratory judgment

compelling the Commission to issue certificates under Rule 19.31.22; (2) denial of substantive

---

[5] Although only three Plaintiffs (RDOP, River Bend, and Canones) were the subject of the
Court's order on summary judgment, the Commission issued final agency decisions on
applications of all five Plaintiffs.

due process under Section 1983; (3) denial of equal protection under Section 1983; (4) civil

conspiracy under Section 1983; (5) violations of due process and equal prosecution under the

New Mexico Constitution; and (6) violations of the Open Meetings Act. Doc. 72. Upon a joint

motion from the parties, the Court again stayed the case pending the administrative appeals in

state court. Docs. 73, 75. This stay included one exception: the Commissioners planned to seek a

ruling from the Court on whether the claims against them should be dismissed due to qualified

immunity. Doc. 73. As such, they filed the present motion to dismiss based on qualified

immunity, which the Court decides while the remainder of the case is stayed.

## **LEGAL STANDARD**

### 1.  **12(b)(6) Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for failure

to state a claim upon which the court can grant relief. "[T]o withstand a Rule 12(b)(6) motion to

dismiss, a complaint must contain enough allegations of fact, taken as true, to state a claim to

relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir.

2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a complaint

does not require detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, it

"requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do." *Twombly*, 550 U.S. at 555.

A court considering a challenge under Rule 12(b)(6) may proceed according to a "two-

pronged approach." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, a court "can choose to

begin by identifying pleadings that, because they are no more than conclusions, are not entitled

to the assumption of truth." *Id.* "While legal conclusions can provide the framework of a

complaint, they must be supported by factual allegations." *Id.* Second, "[w]hen there are well-

pleaded factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief." *Id.*

For purposes of this second prong, the court "accept[s] the well-pled factual allegations in

the complaint as true, resolve[s] all reasonable inferences in the plaintiff's favor, and ask[s]

whether it is plausible that the plaintiff is entitled to relief." *Diversey v. Schmidly*, 738 F.3d 1196,

1199 (10th Cir. 2013) (internal citations and quotation marks omitted). "A claim is facially

plausible when the allegations give rise to a reasonable inference that the defendant is liable."

*Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). The court's consideration, therefore,

is limited to determining whether the complaint states a legally sufficient claim upon which the

court can grant relief. *See Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236

(10th Cir. 1999). The court is not required to accept conclusions of law or the asserted

application of law to the alleged facts. *See Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir.

1994). Nor is the court required to accept as true legal conclusions that are masquerading as

factual allegations. *Ashcroft*, 556 U.S. at 678. The court must, however, view a plaintiff's

allegations in the light most favorable to him. *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th

Cir. 2013).

### 2. Qualified Immunity

Qualified immunity protects public officials from liability "insofar as their conduct does

not violate clearly established statutory or constitutional rights of which a reasonable person

would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v.

Fitzgerald*, 457 U.S. 800, 818 (1982)). In order to defeat qualified immunity, a plaintiff must

assert facts that rebut the presumption of the officer's immunity from suit. *Medina v. Cram*, 252

F.3d 1124, 1130 (10th Cir. 2001). The plaintiff carries the burden of showing that (1) the public

official violated a constitutional or statutory right and (2) the right was clearly established when the alleged violation occurred. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002); *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). A court may address these prongs in either order, *Pearson*, 555 U.S. at 236, but a plaintiff must satisfy both in order to avoid qualified immunity, *Olsen*, 312 F.3d at 1304. As with other motions to dismiss, to survive a motion to dismiss based on qualified immunity, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 677.

A right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The action at issue need not have been previously declared unlawful, but its unlawfulness must be evident in light of preexisting law. *Beedle v. Wilson*, 422 F.3d 1059, 1069 (10th Cir. 2005). Unlawfulness is generally demonstrated "when there is controlling authority on point or when the clearly established weight of authority from other courts supports plaintiff's interpretation of the law." *Id.* at 1069-70 (internal quotation marks omitted). "A prior case need not have identical facts," *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017), but the precedent must make it clear "to every reasonable officer . . . that what he is doing violates that right," *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation marks omitted). The plaintiff bears the burden of identifying "a controlling case or robust consensus of cases" where an officer acting "under similar circumstances" to those faced by the defendants was found to have acted unlawfully. *D.C. v. Wesby*, 138 S. Ct. 577, 591 (2018); *Quinn v. Young*, 780 F.3d 998, 1013 (10th Cir. 2015).

In recent years, the Supreme Court "has issued a number of opinions reversing federal courts in qualified immunity cases." *White v. Pauly*, 137 S. Ct. 548, 551 (2017). "The Court has

found this necessary both because qualified immunity is important to society as a whole, and because as an immunity from suit, qualified immunity is effectively lost if a case is erroneously permitted to go to trial." *Id.* (internal quotation marks and citations omitted). "[T]he defense of qualified immunity gives public officials the benefit of legal doubts." *Donovan v. City of Milwaukee*, 17 F.3d 944, 951 (7th Cir. 1994) (internal quotation marks omitted).

In sum, "[t]o survive a motion to dismiss based on qualified immunity, the plaintiff must allege sufficient facts that show—when taken as true—the defendant plausibly violated his constitutional rights, which were clearly established at the time of violation." *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012).

## ANALYSIS

As mentioned above, Plaintiffs bring this lawsuit against the Commissioners in their individual and official capacities. Because Plaintiffs do not state otherwise, the Court assumes all counts in the amended complaint are brought against the Commissioner in both capacities. The doctrine of qualified immunity, however, only protects officials against individual capacity suits. *See Starkey ex rel. A.B. v. Boulder Cnty. Soc. Servs.*, 569 F.3d 1244, 1264 n.4 (10th Cir. 2009) (qualified immunity protects "officials sued in their personal capacities," not in their official capacities); *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. . . ."). In the present motion, the Court will therefore only consider whether qualified immunity protects the Commissioners in their individual capacities.

Additionally, though not discussed in the briefing by either side the Court notes that Defendant Gail Cramer was a member of the New Mexico State Game Commission but resigned

from the Commission in July 2021, prior to the Commission holding a hearing and issuing final

agency decisions on Plaintiffs' applications. *See* Doc. 72 ¶ 11. Plaintiffs, therefore, only bring

claims against her "based on her conduct prior to her resignation in July 2021." *Id.* As such,

although the parties, and therefore the Court, refer to the "Commissioners" as one group

throughout the briefing and this Order, any discussion regarding the Commissioners' actions or

omissions occurring after July 2021 do not apply to Defendant Cramer.

The amended complaint alleges six counts and the Court will address each in turn.

### 1. Declaratory Judgment

Count one of Plaintiffs' amended complaint seeks a declaratory judgment "declaring that

Plaintiffs have satisfied all requirements of Rule 19.31.22, compelling the Commission to issue a

certificate to Plaintiffs pursuant to Rule 19.31.22, and compelling the Commission and the

Commissioners to retract all statements suggesting or implying that members of the public are

permitted to trespass on Plaintiffs' land." Doc. 72 ¶ 162. The Commissioners move to dismiss

this count against them, arguing that Section 19.31.22 does not grant Plaintiffs an automatic right

to an approved application and that the Commissioners acted within their discretion during the

hearing and in consideration of Plaintiffs' applications.

The Court declines to consider arguments related this count in the present Order, as this

count is stayed while Plaintiffs pursue an administrative appeal. *See* Doc. 73, 75. The order

granting the joint motion to stay does not explicitly say which counts are stayed, but orders that

the case is stayed "except for briefing and a decision on the individual defendants' motion to

dismiss." Doc. 75. The joint motion to stay indicated:

> While the parties request that this case be stayed, the individual defendants seek a
> ruling from the Court regarding whether the claims against them should be
> dismissed due to qualified immunity. The qualified immunity issue is independent
> of the issues that may be addressed during the administrative appeal process, and

> can thus be decided even while those appeals are pending. The parties thus
> request that the stay not apply to a motion to dismiss that the individual
> defendants intend to file (or to the additional briefing, hearing if necessary, and
> decision on that motion).

Doc. 73 at 2. Therefore, the intent of the order was to stay everything except issues (1) pertaining

to qualified immunity which (2) would not overlap with matters that Plaintiffs are

administratively appealing in state court. *See* Doc. 73 at 1 ("[T]he outcome of Plaintiffs['] appeal

may make some or all of the issues raised in the First Amended Complaint moot.").

Count one's request for declaratory judgment is precisely the same issue that forms the

basis of Plaintiffs' administrative appeal. The Commissioner held a hearing and voted on

Plaintiffs' applications and the Commission issued final agency decisions, denying Plaintiffs'

applications and denying their requests for certificates under Section 19.31.22. Count one's

request for declaratory judgment seeks a declaration that Plaintiffs are indeed entitled to

certificates under Section 19.31.22. But Plaintiffs are appealing this same issue in state court

under the procedure set forth in Section 19.31.22; thus, count one overlaps with matters the

Plaintiffs are administratively appealing in state court. As the parties pointed out, "allowing the

state court to make a final decision on Plaintiffs' administrative appeals will help promote

judicial economy," Doc. 73 at 1, and so the Court will not consider the Commissioners'

arguments regarding count one in the present Order.

Additionally, count one does not implicate qualified immunity. Although the

Commissioners allege they are entitled to qualified immunity on Plaintiffs' declaratory judgment

claim, qualified immunity only applies to claims for monetary damages. *See Meiners v. Univ. of

Kansas*, 359 F.3d 1222, 1233 n.3 (10th Cir. 2004) ("Qualified immunity applies to claims for

monetary relief against officials in their individual capacities, but it is not a defense against

claims for injunctive relief against officials in their official capacities."); *Harlow v. Fitzgerald*,

457 U.S. 800, 818 (1982) ("We therefore hold that government officials performing discretionary functions generally are shielded from liability for *civil damages* insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." (emphasis added)). As explained above, the parties' only contemplated exception to the stay was a motion based on qualified immunity. As count one does not implicate qualified immunity, count one is currently stayed and so the Court will not consider the Commissioners' arguments for dismissal of count one in this Order. Once the stay is lifted, the parties may file motions directed at count one, within any motions deadline set by the Court.

## 2. Denial of Substantive Due Process Under Section 1983

In their operative complaint, Plaintiffs allege they have "fundamental rights under the Fourteenth Amendment to the United States Constitution to acquire, use, maintain and enjoy their private property." Doc. 72 ¶ 165. They assert that the Commissioners violated those rights by "refus[ing] to hold hearings and issue a final agency decision without litigation and later refus[ing] to grant approvals to Plaintiffs, first in defiance of Chief Deputy Maestas' December 16, 2019 correspondence, and then again in defiance of this Court's March 9, 2021 Memorandum Opinion and Order Granting Motion for Partial Summary Judgment . . . ." *Id.* ¶ 166. They maintain that the Commissioners are liable for money damages under Section 1983 for this conduct. *Id.* ¶ 173. The Commissioners assert they are entitled to qualified immunity.

To succeed on such a substantive due process claim, "an individual must demonstrate that the government deprived him of life, liberty, or property without due process of law." *Lindsey v. Hyler*, 918 F.3d 1109, 1115 (10th Cir. 2019). As a threshold matter, "to prevail on either a procedural or substantive due process claim, a plaintiff must first establish that a defendant's

actions deprived plaintiff of a protectible property interest." *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000); *see also Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1237 (10th Cir. 2016). Property is defined "in the context of the Fourteenth Amendment's Due Process Clause as a 'legitimate claim of entitlement' to some benefit." *Hyde Park Co.*, 226 F.3d at 1210 (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). In other words, "[a]n abstract need for, or unilateral expectation of, a benefit does not constitute 'property.'" *Id.* Instead, "[p]roperty interests are created and their dimensions are defined by existing rules and understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* (internal quotation marks and citation omitted). "Thus, consistent with Supreme Court precedent, a right to a particular decision reached by applying rules to facts constitutes 'property.'" *Id.* Said another way, "[w]hen analyzing whether a plaintiff presents a legitimate claim of entitlement, we focus on the degree of discretion given [to] the decisionmaker and not on the probability of the decision's favorable outcome." *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, Kan.*, 927 F.2d 1111, 1116 (10th Cir. 1991).

Once past the threshold issue of a protectable property interest, a claim for violation of substantive due process involving executive action (i.e., action by government officials) requires a showing that the official's action shocks the conscience. *See Lindsey v. Hyler*, 918 F.3d 1109, 1115 (10th Cir. 2019) ("A violation of substantive due process may arise in two ways—from (1) legislative acts that infringe on a fundamental right, or (2) official conduct that deprives a person of life, liberty, or property in a manner so arbitrary as to shock the judicial conscience."); *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008) ("The Supreme Court has described two strands of the substantive due process doctrine. One strand protects an individual's

22

fundamental liberty interests, while the other protects against the exercise of governmental

power that shocks the conscience." (citing *Chavez v. Martinez*, 538 U.S. 760, 787 (1994)));

*Dawson v. Bd. of Cnty. Commissioners of Jefferson Cnty., Colorado*, 732 F. App'x 624, 634–35

(10th Cir. 2018) (Tymkovich, J., concurring) ("Our Circuit has settled on the following solution:

if the case involves a *legislative act*, only the 'rights' strand applies. On the other hand, when the

case involves *executive action* by a government official or entity, we apply the 'shocks the

conscience' test." (internal citation omitted)). "[T]o satisfy the 'shock the conscience' standard, a

plaintiff must do more than show that the government actor intentionally or recklessly caused

injury to the plaintiff by abusing or misusing government power. That is, the plaintiff must

demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly

conscience shocking." *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995).

      As mentioned above, Plaintiffs assert that the Commissioners violated their property

rights in two ways: (1) by initially failing to hold hearings and issue final agency decisions on

their applications without litigation and (2) by later refusing to grant their applications.[6] Doc. 72

¶ 166. The Court will address each in turn, starting with the latter assertion.

      a.  <u>Refusing to Grant the Applications</u>

      Plaintiffs argue that they "have a right, after proving non-navigability, to certification that

their river segments are non-navigable," Doc. 76 at 9, while the Commissioners argue that

---

[6] The Commissioners argue that the delay in holding a hearing and the denial of Plaintiffs' applications does not interfere with Plaintiffs' use of their land as there is no evidence of increased trespass during that time. Doc. 74 at 10. The Court need not address this argument because it goes to Plaintiffs' damages, not whether the Commissioners violated their substantive due process rights.

Plaintiffs do not have a protectable property interest in their applications being approved.[7] In other words, Plaintiffs allege a property right in a particular action by the Commissioners (approval of their applications). This is a protectable property interest only if the Commissioners' discretion in approving applications is limited by the procedure in Section 19.22.31 and if approval of the applications is required once Plaintiffs follow these procedures. To that end, Plaintiffs allege that the Commission's role at the hearing is to determine whether "a segment be designated a non-navigable public water," Doc. 72 ¶ 83, and that their applications met all the requirements of Section 19.31.22, including a memorandum and supporting evidence to establish the test for non-navigability as defined by Section 19.31.22, *id.* ¶¶ 16, 59, 60. They further allege that if the Commission finds that the segment should be designated a non-navigable public water, then it must approve their applications. *Id.* ¶ 20.

But Plaintiffs must still allege that the Commissioners lacks discretion in determining whether the segments of water should be designated as non-navigable. Plaintiffs allege that they submitted evidence that the water segments are non-navigable, that the Commission must determine navigability, and, if it finds the segment non-navigable, it must approve the applications. They do not allege, however, that Section 19.22.31 requires that the Commissioners must find the segments non-navigable if certain information is submitted. That is, they do not allege that the Commissioners lack discretion in determining navigability or that the Commission did indeed find the segments to be non-navigable. *See id.* ¶¶ 84, 86 (alleging the Commission

---

[7] To be clear, the New Mexico Supreme Court has now found Section 19.31.22 unconstitutional and prohibited the Commission from further implementation of Section 19.31.22. Plaintiffs' argument is therefore limited to asserting that, at the time they submitted their applications in 2019 and 2020, they had a right to their applications being granted. Because of the New Mexico Supreme Court decision in March 2022, Plaintiffs cannot argue that they presently have a right to their applications being granted.

must consider whether there is substantial evidence for non-navigability and listing information

the Commission *may* consider).

Moreover, even assuming that Plaintiffs did have a protected property interest in approval

of their applications, their claim fails under the second prong of qualified immunity because they

are unable to show that such a right was clearly established. A plaintiff seeking to overcome a

qualified immunity defense bears the burden of identifying "a controlling case or robust

consensus of cases" where an officer acting "under similar circumstances" to those faced by

defendants was found to have acted unlawfully. *District of Columbia v. Wesby*, 138 S. Ct. 577,

591 (2018). Here, Plaintiffs acknowledge that no controlling cases exist regarding similar

circumstances. Doc. 76 at 10. The Court, likewise, is unaware of any controlling cases with

similar factual circumstances; the closest analogy regarding a protectable property interest in the

outcome of a decision appears in municipal land use cases. *See e.g.*, *Zia Shadows, L.L.C. v. City

of Las Cruces*, 829 F.3d 1232 (10th Cir. 2016); *Hyde Park Co. v. Santa Fe City Council*, 226

F.3d 1207 (10th Cir. 2000). But these cases do not present similar enough circumstances to place

a reasonable official on notice that failing to approve Plaintiffs' Section 19.31.22 applications

would deprive them of a protectable property interest.

In an attempt to meet the clearly easblished standard, Plaintiffs point to this Court's prior

Order and the Maestas Attorney General letter. The Court looks first at its previous Order, which

ordered the Commission to hold hearings and issue final agency decisions on Plaintiffs'

applications. Doc. 58. Even assuming this Court's Order could define clearly established law, the

Order would not have placed the Commissioners on notice that declining to approve Plaintiffs'

application would deprive them of a protectable property interest. The Order indicated that the

Commission must follow its ministerial duty to set hearings and issue final agency decisions on

Plaintiffs' pending applications even if the constitutionality of Section 19.31.22 was currently being challenged because that Section had not yet been repealed. *See* Doc. 58 at 10-11, 13. The Order, however, specifically noted that "the Court is not requiring the Commission to approve Plaintiffs' applications." *Id.* at 13. "Under the regulations, the Commission can accept or reject the director's recommendation [to approve the applications] or can 'take such other final action as necessary to resolve the application.'" *Id.* (citing Section 19.31.22.11(G)). The Order, therefore, clarified that "[t]he Commission [] has discretion under the regulations as to the outcome of the decision." *Id.* Given the discretionary language of Section 19.31.22.11(G) cited, this Order would not put a reasonable commissioner on notice that denying Plaintiffs' applications would violate their right to substantive due process.

Moreover, although this Court's Order binds the parties in this case, it does not create clearly established law for purposes of a Section 1983 action. *See Morris v. Noe*, 672 F.3d 1185, 1197 n.5 (10th Cir. 2012) (repeating the "unremarkable proposition that a single unpublished district court opinion is not sufficient to render the law clearly established"); *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007) ("Ordinarily, we say that for a rule to be clearly established there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." (internal quotation marks and citation omitted)).

Turning to the Maestas letter, Plaintiffs argue that this letter, sent to the Commission and Commissioners by Chief Deputy of the Office of Attorney General, warned the Commissioners that "denying applications based on supposed constitutional concerns raises serious due process and equal protection concerns." Doc. 76 at 11 (internal quotation marks and citation omitted). However, in New Mexico, "Attorney General opinions and advisory letters do not have the force

of law." *United States v. Reese*, 2014-NMSC-013, ¶ 36, 326 P.3d 454. As such, the advisory

Maestas letter would not place the constitutional question beyond debate.

Plaintiffs appear to additionally argue that the clearly established determination "does not

require that there be a previous case opinion dealing with the precise issue and facts alleged," so

long as the unlawfulness of the action is apparent. Doc. 76 at 10. Indeed, "[t]he Supreme Court

has explained that officials can still be on notice that their conduct violates established law even

in novel factual circumstances." *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015) (internal

quotation marks and citation omitted). "[A] general constitutional rule already identified in the

decisional law may apply with obvious clarity to the specific conduct in question, even though

the very action in question has not previously been held unlawful." *Cortez v. McCauley*, 478

F.3d 1108, 1119 (10th Cir. 2007) (citing *United States v. Lanier*, 520 U.S. 259, 271 (1997)). Said

another way, "[t]o be clearly established, [t]he contours of the right must be sufficiently clear

that a reasonable official would understand that what he is doing violates that right. Although the

very action in question does not have to have previously been held unlawful, in the light of pre-

existing law the unlawfulness must be apparent." *Albright v. Rodriguez*, 51 F.3d 1531, 1535

(10th Cir. 1995) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *see also White v.

Pauly*, 137 S. Ct. 548, 551 (2017) ("While this Court's case law do[es] not require a case directly

on point for a right to be clearly established, existing precedent must have placed the statutory or

constitutional question beyond debate." (internal quotation marks and citation omitted)). "But the

right cannot be defined at a high level of generality." *Lincoln v. Maketa*, 880 F.3d 533, 537 (10th

Cir. 2018).

The Court declines to decide whether it was "apparent" that the Commissioners acted

unlawfully when denying Plaintiffs' applications. Even assuming that Plaintiffs are correct on

this point, Plaintiffs have failed to allege that the Commissioners' actions shock the conscience, as is required for a substantive due process claim. In their complaint, Plaintiffs alleges that "the Defendants' initial refusal to hold hearings and issue a final agency decision without litigation and later refusal to grant approvals to Plaintiffs, first in defiance of Chief Deputy Maestas' December 16, 2019 correspondence, and then again in defiance of this Court's March 9, 2021 Memorandum Opinion and Order Granting Motion for Partial Summary Judgment Order shocks the conscience . . . ." Doc. 72 ¶ 166. They provide no additional facts and the Court disagrees with this conclusory statement. Given uncertainty as to the constitutionality of Section 19.31.22 and the need to obtain a definitive ruling from the New Mexico Supreme Court on the issue, Plaintiffs have failed to allege that the Commissioners' initial inaction on, and eventual denial of, the applications rose to the level of conscious shocking. Nor do Plaintiffs provide any authority, and the Court is aware of none, to clearly establish that denying the applications rises to the level of conscience shocking. Indeed, neither party addresses the "shocks the conscience" requirement in their briefing, which is fatal to Plaintiffs' claims—they carry the burden once qualified immunity is raised to state a claim for a violation of their clearly established constitutional rights.

For these reason, the Commissioners are entitled to qualified immunity on Plaintiffs' claim that the Commissioners violated their substantive due process rights by failing to approve their applications.

b.  <u>Failing to Hold Hearings and Issue Final Agency Decisions</u>

Plaintiffs' other substantive due process argument is that the Commissioners violated their right to substantive due process by initially failing to hold hearings and issue final agency decisions on their applications without resorting to litigation.[8] In their complaint, Plaintiffs allege

---

[8] Plaintiffs' complaint contains no *procedural* due process claim.

that an application forwarded from the Director *must* be heard at a meeting of the Commission and the Commission *must* issue a final agency decision within 60 days of the meeting. Doc. 72 ¶¶ 19, 20. The Director issued his formal recommendations on all Plaintiffs' applications, *id.* ¶¶ 34, 38, 49, 55, 57, but the Commissioners failed to compel the Commission to set hearings and issue final decisions within in the time prescribed by Section 19.31.22, requiring Plaintiffs to initiate litigation, *id.* ¶¶ 63, 66-70, 127. Indeed, the Commissioners do not dispute that Plaintiffs were entitled to a timely hearing as set forth in Section 19.31.22. *See* Doc. 74 at 7 ("Plaintiffs had a right to the 'ministerial act' of a hearing.").

The Court declines to decide whether the "ministerial" right to timely hearings and decisions is a protectable property interest, for the purposes of substantive due process. Even if it were, Plaintiffs have failed to provide any authority that such a constitutional right is clearly established. Again, Plaintiffs acknowledge that no controlling cases exist regarding similar circumstances, but points to the Court's prior Order and the Maestas Attorney General letter. Doc. 76 at 10. As discussed above regarding the Maestas letter, in New Mexico, "Attorney General opinions and advisory letters do not have the force of law." *Reese*, 2014-NMSC-013, ¶ 36. As such, the advisory Maestas letter would not place the constitutional question beyond debate. Similarly, as discussed above, an unpublished district court order cannot define clearly established law for purposes of a Section 1983 action.

Moreover, the Court's previous Order came too late to provide the notice that could support Plaintiffs' claim. The reason Plaintiffs moved for summary judgment and sought this Order was to force the Commission and the Commissioners to issue final agency decisions on their applications. *Id.* The Court agreed with Plaintiffs and ordered the Commission to hold hearings and issue final agency decisions on Plaintiffs' applications, which the Commission then

did. Doc. 58. As such, the Court's Order, issued after the Commissioners failed to compel the Commission to set a hearing and issue final agency decisions, could not provide notice, at the time of their challenged conduct, that the Commissioners failure to set hearings and issue final agency decisions violated Plaintiffs' right to substantive due process. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) ("Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established *at the time of the challenged conduct*." (emphasis added)).

Lastly, even if Plaintiffs could show that their right to timely hearings and final agency decisions was "apparent" despite the absence of clearly established law on point, they again cite no authority to clearly establish that the Commissioners' failure to set hearings and issue final agency decisions shocks the conscience.

In short, Plaintiffs fail to establish that a reasonable commissioner would be put on notice that delaying setting a hearing and issuing a agency decisions would deprive Plaintiffs of their right to substantive due process. The Commissioners are thus entitled to qualified immunity.

### 3. Denial of Equal Protection Under Section 1983

In their third claim for relief, Plaintiffs asserts that the Commissioners violated their right to equal protection when they denied Plaintiffs' applications after approving applications that submitted the same information, including the same evidence to establish non-navigability. Doc. 72 ¶¶ 176-83. The Commissioners assert they are entitled to qualified immunity on this claim.

Plaintiffs do not argue that they are a protected class. The Court, therefore, will examine their equal protection claim under a "class-of-one" theory. "In the paradigmatic class-of-one case, a public office inflicts a cost or burden on one person without imposing it on those who are

similarly situated in material respects, and does so without any conceivable basis other than a wholly illegitimate motive." *Jicarilla Apache Nation v. Rio Arriba Cnty.*, 440 F.3d 1202, 1209 (10th Cir. 2006). A "class-of-one" equal protection claim requires the plaintiff to plausibly allege that it has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). In other words, the plaintiff carries a "substantial burden" to establish two criteria: "a plaintiff must first establish that others similarly situated in every material respect were treated differently." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216-17 (10th Cir. 2011) (internal quotation marks and citations omitted). Second, a plaintiff must show "this difference in treatment was without rational basis, that is, the government action was irrational and abusive, and wholly unrelated to any legitimate state activity." *Id.* at 1216 (internal quotations and citations omitted). "This standard is objective—if there is a reasonable justification for the challenged action, we do not inquire into the government actor's actual motivations." *Id.*

Here, each Plaintiff argues that they submitted applications containing all the information required under Section 19.31.22, including evidence of non-navigability, but the Commission and Commissioners denied their applications. The Commission and the Commissioners, however, previously approved applications that included precisely the same information and evidence as that submitted by Plaintiffs. By "rejecting evidence [they] had previously found sufficient," Plaintiffs assert that the Commissioners singled them out in violation of the Equal Protection Clause.[9] Doc. 72 ¶ 181.

---

[9] In its prior Order addressing qualified immunity as to the Director of Game and Fish, the Court addressed a similar equal protection argument. Doc. 50 at 24. It held that Plaintiffs' claim was a actually a class-of-five claim rather than a class-of-one claim and that, viewed collectively, the

Just as the parties in their briefs skip prong one and jump to prong two, so does the Court. Assuming that Plaintiffs have stated a plausible claim for a violation of their right to equal protection, Plaintiffs have not shown that their constitutional right was clearly established when the alleged violation occurred. Plaintiffs argue that "[w]hile there are no prior cases dealing specifically with whether failure to uniformly apply this specific Rule to all applicants is a violation of a plaintiff's right to equal protection, the general rule of law that state actors are prohibited from treating similarly situated persons differently is well-established." Doc. 76 at 12 (citing *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000)). Although Plaintiffs need not find controlling precedent with an identical fact pattern, the similarity between the purported notice-providing case and the pending case must go beyond sharing the same cause of action. *See Kerns v. Bader*, 663 F.3d 1173, 1182-83 (10th Cir. 2011) ("[W]hen it comes to deciding the second qualified immunity question, it is not enough to look at, and declare a law enforcement officer liable, based on such generalized principles. . . . The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.") (internal quotation marks omitted); *see also Lincoln v. Maketa*, 880 F.3d 533, 537 (10th Cir. 2018) ("[T]he right cannot be defined at a high level of generality.").

As with their claim for a violation of substantive due process, Plaintiffs assert that their equal protection right was clearly established by the Court's prior Order and the Maestas letter. Starting with the Court's prior Order, it would not have given the Commissioners reasonable

---

similarity between the Plaintiffs' respective claims undermines their individual claims that the Commissioners singled them out and treated them differently without any conceivable basis other than a wholly illegitimate motive. *Id.* Defendants do not raise this point in their motion and so the Court need not consider it in the present Order.

notice that denying the applications would violate Plaintiffs' right to equal protection because the Order includes no discussion of equal protection, of the 2018 applications that the Commission granted, or even of the Commissioners' duty to grant the applications. *See* Doc. 58. That Order is specifically directed at the Commission and Commissioners' duty to set a hearing and issue final agency decisions on Plaintiffs' applications. *Id.* Further, as discussed above, an unpublished district court order cannot define clearly established law for purposes of Section 1983.

Regarding the Maestas letter, as discussed above, such a letter is advisory and does not carry the force of law. It would therefore not give a reasonable official clear notice of a potentially unconstitutional action. As such, Plaintiffs have failed to show the law was clearly established for their class-of-one equal protection claim and the Commissioners are thus entitled to qualified immunity.

### 4. Civil Conspiracy Under Section 1983

In their complaint, Plaintiffs allege the Commissioners engaged in a civil conspiracy to deny Plaintiffs' constitutional rights: "the Commissioners agreed through public communications during public hearings and through still undisclosed communications among themselves to disapprove Plaintiffs' applications for non-navigable water permits and thus deprive Plaintiffs of their constitutional and statutory rights." Doc. 72 ¶ 189. "To recover under a § 1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient." *Dixon v. City of Lawton, Okl.*, 898 F.2d 1443, 1449 (10th Cir. 1990).

As with their other Section 1983 claims, even if Plaintiffs had stated a claim for civil conspiracy, the Commissioners are entitled to qualified immunity because Plaintiffs fail to meet their burden to show clearly established law. Plaintiffs again only point to the Court's prior

Order to argue that their rights were clearly established. But as discussed above, that Order would not put a reasonable official on notice that denying Plaintiffs' applications would violate their rights and, even if it would, an unpublished district court order cannot define clearly established law for Section 1983 purposes.

The Court has also already concluded that, even if Plaintiffs could clear the first prong of the qualified immunity analysis, at the time the Commissioners denied Plaintiffs' application, no clearly established law existed to put the Commissioners on notice that their actions would violate Plaintiffs' constitutional rights. Plaintiffs' conspiracy claim is that the Commissioners conspired to violate the same rights Plaintiffs allege in other counts that the Commissioners did violate. If clearly established law did not exist to warn the Commissioners that denying Plaintiffs' applications would violate the United States Constitution, neither did clearly established law exist to warn the Commissioners that conspiring to deny Plaintiffs' applications would violate the United States Constitution. *See Frasier v. Evans*, 992 F.3d 1003, 1023-24 (10th Cir. 2021) ("there was no clearly established law that the alleged object of the officers' conspiracy was actually unconstitutional under the First Amendment, and, consequently, the officers are entitled to qualified immunity for any such conspiracy"). The Commissioners are therefore entitled to qualified immunity on Plaintiffs' claim for civil conspiracy.

**5. Denial of Due Process and Equal Protection Under the New Mexico Constitution**

The fifth count of Plaintiffs' complaint alleges violations of substantive due process and equal protection under the New Mexico Constitution. Doc. 72 ¶¶ 193-96. The Commissioners move to dismiss this claim based on qualified immunity. Doc. 74 at 13. In the complaint, Plaintiffs bring this count under the New Mexico Tort Claims Act ("NMTCA"). Doc. 72 at 37. In their brief, however, Plaintiffs argue this count is brought under a different statute—the New

Mexico Civil Rights Act ("NMCRA"). Doc. 76 at 15. Either way, the defense of qualified immunity does not apply.

The NMTCA provides a cause of action for torts caused by a governmental entity or a public employee when certain waivers of sovereign immunity apply. *See* NMSA §§ 41-4-4 to -12. Unlike the NMCRA, the Tort Claims Act does not provide a general waiver of immunity for civil damages claims brought under the New Mexico Constitution. *See Ford v. New Mexico Dep't of Pub. Safety*, 1994-NMCA-154, ¶ 26, 891 P.2d 546, 553 ("We have previously held that absent a waiver of immunity under the Tort Claims Act, a person may not sue the state for damages for violation of a state constitutional right."). Because the only sovereign immunity waivers under the NMTCA are those listed in the statute, and no waiver exists for state constitutional claims, the concept of qualified immunity has no place in a NMTCA analysis. Defendants do not move to dismiss the NMTCA count on grounds that the NMTCA provides no avenue to a successful state constitutional claim. Therefore, addressing only the arguments Defendants make, the Court rejects Defendants' argument that Plaintiffs' NMTCA claim should be dismissed on the basis of qualified immunity.

In contrast to the NMTCA, the NMCRA does provide a cause of action for a state actor's violations of the New Mexico Constitution. *See* NMSA § 41-4A-3(B). A relatively new law, it applies to claims from acts or omission that occurred on July 1, 2021 or after. NMSA §41-4A-12. The Act specifically provides that the defense of qualified immunity cannot be used in claims arising under the NMCRA. NMSA §41-4A-4 ("In any claim for damages or relief under the NMCRA, no public body or person acting on behalf of, under color of or within the course and scope of the authority of a public body shall enjoy the defense of qualified immunity for causing the deprivation of any rights, privileges or immunities secured by the bill of rights of the

constitution of New Mexico."). Qualified immunity, therefore, would provide the

Commissioners no defense to a cause of action brought under the NMCRA. But the parties do

not address whether Plaintiffs' allegations that Defendants violated their rights under the New

Mexico Constitution are sufficient to state a claim under the NMCRA, even though Plaintiffs do

not mention the NMCRA in their complaint. Again, the Court limits it analysis to the arguments

the parties have made.[10]

Confining itself to the arguments the parties do brief, the Court rejects Defendants'

narrow argument that it should apply the doctrine of qualified immunity to dismiss Plaintiffs'

state law claims brought under the New Mexico Constitution.

### 6. Open Meetings Act

Count six of the amended complaint alleges that "[b]y engaging in a de facto withdrawal

of the Rule, the Commission and the Commissioners violated New Mexico's Open Meetings Act

which requires the Commission to provide reasonable public notice and an open meeting before

repealing the Rule." Doc. 72 ¶ 198. The Commissioners acknowledge that this claim is not

subject to qualified immunity, and that the parties have agreed to stay all matters except qualified

immunity. Nonetheless, Defendants proceed to assert that this claim fails. Doc. 74 at 14; *see also*

Doc. 76 at 17 (Plaintiffs' response, noting that the parties have agreed to only argue the claims of

qualified immunity). As explained above with respect to count one, counts that do not implicate

qualified immunity are currently stayed. Count six is currently stayed because it does not

implicate qualified immunity. Accordingly, the Court declines to consider the arguments the

---

[10] And, the Court understands that the arguments the parties can make are limited by their
agreement to only address issues of qualified immunity at this point.

parties make in their briefs related to count six. The parties may file motions related to this count once the stay is lifted, and within any motions deadlines set by the Court.

The Commissioners also argue that, if the Court grants qualified immunity on the federal claims as it seeks in the present motion to dismiss, it should then decline supplemental jurisdiction over the state-law claims in count six as "[t]here are no valid federal claims left." Doc. 78 at 12. However, the Court has not dismissed all federal claims over which it has original jurisdiction. Although it dismissed those federal claims brought against the Commissioners in their individual capacities, Plaintiffs also allege federal claims (violation of substantive due process, equal protection, and civil conspiracy) against the New Mexico Game Commission and the Commissioners in their official capacities. Those claims remain active. As such, the Court rejects the Commissioners argument to decline supplemental jurisdiction over the state-law claims on the basis that there are no valid federal claims left.

## CONCLUSION

For these reasons, the Court grants in part and denies in part "Defendants Sharon Salazar Hickey, Roberta Salazar-Henry, Jimmy Bates, Gail Cramer, Tirzio Lopez, and Jeremy Veshach's Motion to Dismiss Claims of Denial of Constitutional Rights" (Doc. 74). The motion to dismiss is granted in part, and the Commissioner Defendants in their individual capacities are granted qualified immunity, as to count 2 (denial of substantive due process), count 3 (denial of equal protection), and count 4 (civil conspiracy). The motion to dismiss is denied as to all other counts.

_Steve Yarbrough_

_____
UNITED STATES MAGISTRATE JUDGE